813 A.2d 761

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Robert FISHER, Appellant.**

Supreme Court of Pennsylvania.

Submitted July 8, 2002.

Decided Dec. 31, 2002.

108

Carl M. Knapp, for Robert Fisher, appellant.

Patricia Eileen Coonahan, Norristown, for the Com. of Pa., appellee.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Chief Justice ZAPPALA.

The present appeal challenges the denial of relief pursuant to Appellant's PCRA[1] petition.

1. Post Conviction Relief Act. 42 Pa.C.S. §§ 9541–9546.

In 1980, Appellant, Robert Fisher, murdered his girlfriend, Linda Rowden, because she gave statements to the police implicating Fisher in the drug-related killing of Nigel Anderson. Appellant shot Rowden in public, in front of eyewitnesses, then drove to the apartment of a friend and told her he had shot Rowden because she was cooperating with the police in their investigation of Anderson's murder. Appellant fled to New York where he was apprehended seven years later, extradited to Pennsylvania, tried for Rowden's murder, convicted of first-degree murder, and sentenced to death in 1988. On direct appeal, this Court vacated the conviction and remanded the matter for a new trial, due to improper evidence introduced in the first trial. *Commonwealth v. Fisher*, 527 Pa. 345, 591 A.2d 710 (1991) (*Fisher I*).

Appellant was retried in 1991, again convicted of first-degree murder, and again sentenced to death. On direct appeal, this Court affirmed the conviction, but held that Appellant was entitled to a new sentencing hearing because of improper admission of victim impact evidence. *Commonwealth v. Fisher*, 545 Pa. 233, 681 A.2d 130 (1996) (*Fisher II*).

Following a third sentencing hearing, Appellant was again sentenced to death. On appeal, this Court affirmed the death sentence. *Commonwealth v. Fisher*, 559 Pa. 558, 741 A.2d 1234 (1999) (*Fisher III*).

Appellant then filed a petition for post-conviction collateral relief. Counsel was appointed and filed an amended petition. Following a hearing, the PCRA court denied relief. This is the appeal from the denial of PCRA relief.[2]

Appellant asserts that all prior counsel were ineffective. In order to demonstrate entitlement to relief for a claim of ineffectiveness of counsel, Appellant would have to demonstrate: (1) that there is merit to the underlying claim; (2) that counsel had no reasonable basis for his or her conduct; and (3) that Appellant was prejudiced by counsel's performance, i.e., that there is a reasonable probability that, but for the act or

---

**2.** This Court directly reviews the denial of post-conviction relief in death penalty cases. 42 Pa.C.S. § 9546(d).

omission challenged, the outcome of the proceeding would have been different. *Commonwealth v. Meadows,* 567 Pa. 344, 787 A.2d 312, 319 (2001). Moreover, the PCRA requires that the allegation of error has not been previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). These standards govern our review of the issues raised by Appellant.

Appellant raises fourteen issues. They are:

1. "Whether the learned trial judge erred by denying Fisher's amended petition for post conviction relief?"

2. "Whether Appellant was denied a full and fair opportunity to develop and litigate his claims that prior counsel was ineffective, and was denied his state and federal constitutional rights to due process, where the trial court denied Appellant funds for investigation and mental health experts necessary to demonstrate counsel's ineffectiveness?"

3. "Whether the learned trial judge erred by not explaining to the jury that mitigating circumstances need not be connected to the crime itself and whether appellate counsel was ineffective for failing to raise and litigate this claim on direct appeal?"

4. "Whether Fisher was denied his state and federal constitutional rights to present all mitigation evidence to the jury when the trial judge precluded Fisher from testifying that he did not commit the crime and whether appellate counsel was ineffective for failing to raise and litigate this claim on direct appeal?"

5. "Whether Fisher was denied his state and federal constitutional rights to confrontation and due process during both the guilt and penalty phase, when the trial judge permitted hearsay allegations from the deceased regarding alleged assaults on the deceased by Fisher and whether appellate counsel was ineffective for failing to raise and litigate this claim on direct appeal?"

6. "Whether Fisher was denied his state and federal constitutional rights to due process by the prosecutor's

numerous improper comments made during the closing arguments of the guilt phase and penalty phase?"

7. "Whether Fisher was denied his state and federal constitutional rights to due process and effective assistance of counsel where counsel failed to object or seek remedial actions following the prosecutor's numerous improper comments made during his closing arguments and whether appellate counsel was ineffective for failing to raise and litigate this claim on direct appeal?"

8. "Whether Fisher was denied his state and federal constitutional rights to due process by the trial judge's erroneous instructions on 'reasonable doubt' and whether all prior counsel were ineffective for failing to raise and litigate this claim at all prior stages of these proceedings?"

9. "Whether Fisher was denied his state and federal constitutional rights to effective assistance of counsel where his attorney failed to object or otherwise challenge the court's failure to give an appropriate cautionary instruction on identification testimony and whether appellate counsel was ineffective for failing to raise and litigate this claim on direct appeal?"

10. "Whether Fisher was denied his state and federal constitutional rights to effective assistance of counsel where his attorney failed to investigate, develop, present and argue mitigating circumstances and whether appellate counsel was ineffective for failing to raise and litigate this claim on direct appeal?"

11. "Whether Fisher was denied his state and federal constitutional rights to due process by the trial court's failure to instruct the jury on the defense of intoxication and counsel's failure to request such an instruction or object to its omission denied Fisher effective assistance of counsel and whether appellate counsel was ineffective for failing to raise and litigate this claim on direct appeal?"

12. "Whether Fisher was denied his state and federal constitutional rights to due process and a fair trial

when the court failed to dismiss jurors who were exposed to outside information regarding his case and whether all prior counsel were ineffective for failing to raise and litigate this claim at all prior stages of these proceedings?"

13. "Whether Fisher was entitled to post conviction relief from his conviction and sentence because of the cumulative effect of the errors contained in this petition and litigated in prior proceedings?"

14. "Whether all prior counsel were ineffective for failing to raise the issues presented in Fisher's amended petition for post conviction relief at all prior stages of this case?"

We will consider these issues *seriatim.*

First, Appellant claims the PCRA court erred by denying his petition for post-conviction relief. As Appellant recognizes, this is the ultimate issue of this appeal, and depends on our resolution of the remaining thirteen issues.

Next, Appellant claims he was denied a full and fair opportunity to develop and litigate his claims that prior counsel was ineffective, and was denied his state and federal constitutional rights to due process, where the trial court denied him funds for investigation and mental health experts necessary to demonstrate counsel's ineffectiveness. He relies in part on *Ake v. Oklahoma,* 470 U.S. 68, 70, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (stating that when a capital defendant's mental health is at issue, "the Constitution requires that an indigent defendant have access to the psychiatric examination and assistance necessary to prepare an effective defense.").

Appellant's reliance on *Ake* is misplaced. The Court in *Ake* held that indigent defendants are entitled to cost-free access to psychiatric experts only in very limited circumstances where the defendant's sanity at the time of the offense was a significant factor at trial. In *Ake,* there was a defense of insanity, not, as Appellant is arguing, questions of mitigation relevant to a sentencing determination. In fact, Appellant is not even arguing he should have received public funds to

engage a neuropsychological expert to aid his defense during the penalty phase of trial—he claims it was error to deny public funds to engage a neuropsychological expert to aid him in a collateral proceeding to establish a claim of ineffective assistance of counsel.

This Court recently held that "a capital defendant is entitled to state-paid psychiatric assistance only where the assistance is needed to rebut the prosecutor's argument of future dangerousness, not to prove mitigating circumstances." *Commonwealth v. Miller*, 560 Pa. 500, 746 A.2d 592, 600 (2000)[3] (citing *Commonwealth v. Christy*, 540 Pa. 192, 656 A.2d 877, 883 (1995)). The *Miller* Court went on to say: "Here, future dangerousness was not an issue; therefore, appellant was not entitled to psychiatric assistance to prove the mental health mitigating circumstances. Nevertheless, appellant was provided with psychiatric assistance, and two mental health experts testified on his behalf during the penalty phase of his trial." *Miller*, 746 A.2d at 600. As in *Miller*, Appellant was provided with state-paid psychiatric assistance though future dangerousness was not an issue. See *Fisher III*, 741 A.2d at 1245. Unlike *Miller*, the psychiatrists selected by Appellant concluded that his capacity was not diminished on the day of the murder, and thus their reports were not helpful to his defense. Appellant was then provided funds to engage a third psychiatrist, who concluded that Appellant did not suffer from post traumatic stress syndrome or disorder. Now Appellant is urging that it was error to deny additional public funds to enable him to seek other psychiatric experts to support a claim of ineffective assistance of counsel in a collateral attack on his sentence. This claim is far too attenuated to have any credibility. As this Court stated recently, "a defendant is not entitled to unlimited court-appointed experts until he finds one that renders the opinion he desires." *Commonwealth v. Ches-*

**3.** *But see Miller*, (Saylor, J., concurring) ("It might be an abuse of discretion for a trial court in a capital case to deny psychiatric funding in a broader array of circumstances, to insure that an indigent defendant is provided core resources necessary to present a full and fair defense in all phases of capital litigation.").

*ter*, 557 Pa. 358, 733 A.2d 1242, 1252 (1999) (citing *Commonwealth v. Faulkner*, 528 Pa. 57, 595 A.2d 28, 37 (1991)).

Appellant next argues that the trial judge erred by failing to explain to the jury that mitigating circumstances need not be connected to the crime itself and that appellate counsel was ineffective for failing to raise and litigate this claim on direct appeal. The mitigation presented at Appellant's sentencing hearing consisted largely of his military experience, wounds received in battle in Vietnam, and his record in prison since his incarceration on these charges. Although the jury had been instructed on the mitigating circumstance of 42 Pa.C.S. § 9711(e)(8), the jury asked the Court the following question during deliberations: "Do mitigating factors have to correlate with [the] crime or can they have no correlation at all?" N.T., 6/24/97 at 145, 147. In response, the judge re-read the statutory language. When defense counsel objected, the judge responded: "I've given the instruction, which gives the opportunity to decide that it goes with the offense or it doesn't go with the offense," *id.* at 150, essentially allowing jurors freedom in weighing mitigating evidence whether or not it was connected to the crime.[4]

The United States Supreme Court reviewed 42 Pa.C.S. § 9711(e)(8) in *Blystone v. Pennsylvania*, 494 U.S. 299, 308, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), and held that the statutory language satisfies the dictates of the Eighth Amendment. Section 9711(e)(8) states that mitigating circumstances shall include: "Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense."

It was not erroneous to repeat this language in response to the jury's question. It is within the sound discretion of the judge to determine the scope of additional instructions to be given to a jury which has requested information so long as the

---

4. Imposition of the death penalty requires a unanimous jury. Aggravating circumstances must be found unanimously by the entire jury. *Commonwealth v. Jermyn*, 551 Pa. 96, 709 A.2d 849 (1998). Mitigating circumstances, on the other hand, may be found individually and personally by single jurors. *Id*; *Commonwealth v. Begley*, 566 Pa. 239, 780 A.2d 605, 644 (2001).

additional charge is a correct statement of the law. *Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076, 1084 (1977); *see also Commonwealth v. Chambers*, 546 Pa. 370, 685 A.2d 96, 106 (1996).

Appellant's fourth claim is that he was denied his state and federal constitutional rights to present all mitigation evidence to the jury when the trial judge precluded him from testifying he did not commit the crime and that appellate counsel was ineffective for failing to raise and litigate this claim on direct appeal. Immediately before the killing, an eyewitness who had known Appellant for eleven years saw him riding with Rowden in her car. The other passenger in the car saw Appellant shoot the victim. Immediately after the killing, as he dumped Rowden's body on the sidewalk, Appellant explained to the bystanders that his "wife," the victim, had just shot herself, a claim conclusively disproved by forensic evidence. Then Appellant drove to the home of a friend and told her he had just shot Rowden and why. Appellant subsequently fled the jurisdiction and eluded capture for seven years.

The PCRA court denied relief because this Court has held that a capital defendant has no constitutional right to testify to his innocence at the penalty phase of trial, citing *Commonwealth v. Stokes*, 532 Pa. 242, 615 A.2d 704 (1992). Appellant attempts to distinguish *Stokes* on the basis that the *Stokes* penalty-phase jury was the same body as the guilt-phase jury, whereas Appellant's penalty-phase jury was a new jury, not the same one which had decided his guilt. Nevertheless, the reasoning of *Stokes* applies in Appellant's circumstance as well: "testimony regarding appellant's guilt was no longer relevant at the sentencing phase. The appellant's testimony was properly limited to a consideration of the appropriate aggravating and mitigating circumstances." *Stokes*, 615 A.2d at 715.

Appellant argues that *Stokes* is undermined by *Commonwealth v. Meadows*, 567 Pa. 344, 787 A.2d 312 (2001), whether or not the same jury is determining both guilt and penalty. *Meadows* referred to the concept of "residual doubt," whereby a jury which had any lingering or residual doubt about a

defendant's guilt might minimize the damage by not sending him to his death. *Meadows,* 787 A.2d at 321. *Meadows,* however, did not undermine *Stokes. Meadows* held that trial counsel was not ineffective merely because he pursued a "residual doubt" strategy during the penalty phase rather than a different, inconsistent, mutually exclusive penalty-phase strategy. *Meadows* does not stand for the proposition that penalty-phase counsel must employ a "residual doubt" strategy, nor does it suggest that counsel might be deemed ineffective for failing to do so. We have said repeatedly that a petitioner is not entitled to relief because counsel's trial strategy was unsuccessful; when the course chosen was reasonable, counsel cannot be faulted for failing to pursue a different path. *Chester,* 733 A.2d at 1252–53. Speculation by hindsight that a different strategy might possibly have been successful is not the test which establishes ineffectiveness of counsel.

 Appellant's next argument is that he was denied his state and federal constitutional rights to confrontation and due process during both the guilt and penalty phase, when the trial judge permitted hearsay allegations from the deceased regarding alleged assaults on the deceased by Appellant and that appellate counsel was ineffective for failing to raise and litigate this claim on direct appeal. There is no merit to this contention.

This argument was litigated and decided in both *Fisher II* and *Fisher III,* and thus runs afoul of 42 Pa.C.S. § 9543(a)(3), which prohibits PCRA review of issues previously litigated. In *Fisher II,* this Court held that it was proper to allow introduction of the victim's hearsay statements to the police two days before her murder that Appellant had been assaulting and harassing her because she was cooperating with the police in connection with the Nigel Anderson murder investigation. The statements were not offered to prove the truth of the matter asserted by the declarant, but to establish her belief that this was the reason for Appellant's harassment. Thus the statements were admissible to establish the victim's state of mind, and the trial court admitted the statements with a cautionary instruction to that effect. The statements sup-

ported the Commonwealth's theory that the motive for Appellant's crime was retaliation for the victim's cooperation with the police or prevention of future cooperation. *Fisher II*, 681 A.2d at 138–39; *Fisher III*, 741 A.2d at 1242. As evidence of motive, the testimony was clearly relevant and admissible. *Commonwealth v. Griffin*, 511 Pa. 553, 515 A.2d 865 (1986). An appellant cannot obtain post-conviction review of claims previously litigated on appeal by alleging ineffective assistance of prior counsel to support previously litigated claims. *Commonwealth v. Bracey*, 568 Pa. 264, 795 A.2d 935, 939 n. 3 (2001); *Commonwealth v. Porter*, 556 Pa. 301, 728 A.2d 890, 896 (1999); *Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638 (1998); *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 703 (1998).

The next issue is whether Appellant was denied his state and federal constitutional rights to due process by the prosecutor's numerous allegedly improper comments made during the closing arguments of the guilt phase and penalty phase and whether trial and appellate counsel were ineffective for failing to object or seek remedial actions and for failing to raise and litigate this claim on direct appeal.

The "numerous improper comments" alleged by Appellant are these. First, the prosecutor allegedly vouched for the credibility of Commonwealth witnesses and expressed his personal opinion about the evidence. N.T., 6/24/97, at 80; N.T., 8/27/91, at 146. Second, he allegedly expressed his personal opinion that the death penalty was required. N.T., 6/27/97, at 65. Third, he allegedly misled the jury that mitigating evidence must be connected to the crime and that mitigating circumstances had to exist at the time of the crime. N.T., 6/24/97, at 65, 80, 83–86. Fourth, he allegedly expressed his opinion that Appellant was just trying to fool the jury and wrongly told the jury that mercy and sympathy could play no part in their deliberations. N.T., 6/24/97, at 65, 82–85. Fifth, he allegedly made numerous improper references to the murder of Nigel Anderson. N.T., 6/24/97, at 66–70. Finally, the prosecutor allegedly tried to bolster the credibility of Commonwealth witnesses by referring to prior consistent state-

ments, though such prior testimony had not been admitted into evidence. N.T., 6/24/97, at 80–81.

Comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict. *Commonwealth v. Hackett,* 558 Pa. 78, 735 A.2d 688, 696 (1999). The alleged erroneous remarks must be examined in light of the case as a whole and in the context of the aggravating and mitigating circumstances.

Appellant's first allegation is that the prosecutor improperly vouched for the credibility of prosecution witnesses. When read in context, however, the remarks were not improper. The prosecutor was reviewing the testimony of several prosecution witnesses after Appellant's counsel had attacked their testimony, in an effort to counter the argument of defense counsel. Second, the prosecutor's argument that the death penalty was required was not a statement of personal opinion but argument that the Commonwealth had proved an aggravating factor and Appellant had proved no mitigating factor, in which case imposition of the death penalty is statutorily required. *See* 42 Pa.C.S. § 9711(c)(1)(iv). "At the penalty phase, where the presumption of innocence is no longer applicable, the prosecutor is afforded even greater latitude." *Hackett,* 735 A.2d at 696–97. Third, as to the prosecutor's alleged attempt to mislead the jury that mitigating circumstances had to exist at the time of the crime, the argument cannot be read as an attempt to mislead the jury, but only as disparaging, yet fair, comment on Appellant's presentation of his good prison behavior record as evidence in mitigation. Fourth, the prosecutor did not tell the jury that mercy and sympathy could not be considered, but only that a defendant was not entitled to an instruction that the jury may consider feelings of sympathy and mercy, which was a correct statement of the law. Inasmuch as the court properly instructed the jury as to 42 Pa.C.S. § 9711(e)(8), there was no error.

Finally, the references to Nigel Anderson were based on the evidence in this case and were in no way improper.

Next, Appellant argues that he was denied his state and federal constitutional rights to due process by the trial judge's erroneous instructions on reasonable doubt and that all prior counsel were ineffective for failing to raise and litigate this claim at all prior stages of these proceedings. He objects specifically to two examples given by the trial judge to express the concept of reasonable doubt. First, the trial judge explained that prior to deliberations, a juror has reasonable doubt because he has not yet had a chance to deliberate. Once a juror has heard the evidence and deliberated, he may go beyond reasonable doubt and reach a verdict. Second, the judge used the example of a parent weighing the advantages of placing a child in a private school rather than public school. The judge described the point at which the parent reaches a decision as the point where he overcomes reasonable doubt.

A jury charge must be read as a whole, and will not be reviewed by taking isolated comments out of context. *Commonwealth v. Gibson*, 553 Pa. 648, 720 A.2d 473, 481 (1998); *Commonwealth v. Smith*, 548 Pa. 65, 694 A.2d 1086, 1092–93 (1997).

The court's charge was as follows:

Although the Commonwealth has the burden of proving the Defendant guilty beyond a reasonable doubt as to each and every charge, this does not mean that the Commonwealth must prove it beyond all doubt or to a mathematical certainty or to a hundred percent or beyond a peradventure of doubt or any other untoward and impossible burden, nor must the Commonwealth demonstrate the complete impossibility of innocence.

Now, what is reasonable doubt? A reasonable doubt, a word that I have used throughout this charge, is a doubt that would cause a reasonably careful and sensible person to pause and hesitate before acting upon a matter of importance in his or her own affairs. Let me repeat it. A reasonable doubt is a doubt that would cause a reasonably

careful and sensible person to hesitate before acting upon a matter of importance in his or her own affairs.

\* \* \*

Let me put it in a civil context for you. Suppose you and your wife, you and your husband were arguing back and forth whether or not to send a child of yours to private school, sending your child to private school at considerable havoc to your personal budget, and if you did send this child to a private school, it would be a considerable inconvenience to you and sacrifice. And you were arguing back and forth as to the pluses of going to private school, small classes, individual attention, ability to participate in all of the activities and maybe the greater demands and more personal instructions versus a wider distribution of persons from all areas of the community versus the better equipment that may be provided by the public tax dollars and, perhaps, the ability to get rubbed up a little bit with all levels of society versus not so. And suppose, after discussing this with your wife or your husband, as the case may be, after two weeks, you really didn't make any determination whether you wanted to send the kid to private school or not. But suppose you continued on this discourse and you talked about it for another two weeks. And suppose after two weeks had transpired, you came to the firm conclusion that it was more advantageous to send this child to private school, even though it was going to cause some havoc to your personal budget but that the advantages outweighed the disadvantages and you were firmly committed to send this child to private school. It was at this point in this very important decision in your own private lives that, after great logic, reasoning and rationale and everything else being applied to this particular problem, that you came to the firm conclusion that you were going to send this child to private school. It would be at that point, after you had come to that firm conclusion, you had done something about it, that you would have gone beyond reasonable doubt.

So, to summarize, you may not find the Defendant guilty based on a mere suspicion of guilt. The Commonwealth has

the burden of proving the Defendant guilty beyond a reasonable doubt. If it meets that burden, then the Defendant is no longer presumed to be innocent and you should find him guilty. On the other hand, if the Commonwealth does not meet its burden, then you should find him not guilty.

The Commonwealth's burden, as I said, is to prove the Defendant's guilt beyond a reasonable doubt, but it does not mean that the Commonwealth must prove the utter impossibility of the Defendant's innocence or the Defendant's guilt to a mathematical certainty, nor must it prove the Defendant's guilt beyond all doubt. The Commonwealth's burden to prove the Defendant guilty beyond a reasonable doubt does not mean that the Commonwealth must prove the Defendant's guilt to a moral certainty.

A reasonable doubt can not be fancied or conjured up in the minds of the jury, as I said, to escape an unpleasant duty. It must be an honest doubt arising from the evidence, itself, the kind of doubt that would restrain a reasonable man from acting in a matter of importance to himself or herself, a reasonable woman.

N.T., 8/28/91, at 20–25. Viewing the lengthy charge on reasonable doubt as a whole, it clearly and accurately stated the law, and there was no error. Counsel, therefore, cannot be deemed ineffective for failing to object or to raise this issue in prior proceedings.

■ Appellant's ninth claim is that he was denied his state and federal constitutional rights to effective assistance of counsel where his attorney failed to object or otherwise challenge the court's failure to give an appropriate cautionary instruction on identification testimony and that appellate counsel was ineffective for failing to raise and litigate this claim on direct appeal. He claims that Commonwealth identification witness Frieda Sambrick failed to identify Appellant at a lineup. Trial counsel attacked her in-court identification, but did not request a *Kloiber* instruction[5] to the effect that her identification testimony must be received with caution.

5. *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820 (1954).

This issue has been fully and finally litigated. In *Fisher II*, 681 A.2d at 141–42, this Court dealt with Sambrick's identification at length, concluding that her failure to identify Appellant in a pre-trial line-up was not due to lack of recognition but rather to her fear that identifying Appellant, whom she had known for eleven years, would endanger her and her family. "[A] petitioner cannot obtain post-conviction review of claims previously litigated by alleging ineffective assistance of prior counsel and presenting new theories of relief to support previously litigated claims." *Bracey*, 795 A.2d at 939 n. 2; *Porter*, 728 A.2d at 896.

Next, Appellant claims that he was denied his state and federal constitutional rights to effective assistance of counsel where his attorney failed to investigate, develop, present, and argue mitigating circumstances and that appellate counsel was ineffective for failing to raise and litigate this claim on direct appeal. He alleges that counsel should have investigated, among other things, "Fisher's family relationships, childhood, upbringing, incidences of abuse or neglect, education, injuries, diseases, psychological condition, marital status, etc.," and that failure to do so constituted ineffective assistance. Brief for Appellant at 44. We are not convinced that to meet the minimal constitutional standard of effectiveness, counsel must thoroughly investigate all the specified areas and other unspecified areas, as Appellant argues.

At his third sentencing hearing, Appellant testified at length about his childhood, education, military service, wounds, Purple Heart awarded personally by President Johnson, drug abuse to counter the pain from his military wounds, exemplary work history in prison, and treatment by psychologists and psychiatrists. Counsel requested and received state funds to employ a private investigator to aid his investigation, and counsel personally pursued leads suggested by Appellant. At the evidentiary hearing before the PCRA court, Appellant's counsel testified that Appellant instructed him he did not want any of his family members to testify. Counsel who represented Appellant at his first two sentencing hearings also testified that Appellant told him he did not want his family to testify.

 Counsel cannot be deemed ineffective for following his client's instructions. *Commonwealth v. Taylor*, 553 Pa. 144, 718 A.2d 743, 745 (1998); *Commonwealth v. Sam*, 535 Pa. 350, 635 A.2d 603, 611–12 (1993). Appellant did not present anything at the PCRA evidentiary hearing which would have produced a different result at his third sentencing hearing. Counsel cannot be faulted for failing to discover or present evidence if Appellant fails to meet the burden of establishing that the evidence exists. *Commonwealth v. Morris*, 546 Pa. 296, 684 A.2d 1037, 1045 (1996); *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332, 1335 (1981). We find no merit in this issue, and counsel cannot be deemed ineffective.

 Appellant's next argument is that he was denied his state and federal constitutional rights to due process by the trial court's failure to instruct the jury on the defense of intoxication, and counsel's failure to request such an instruction or object to its omission denied Appellant effective assistance of counsel, and appellate counsel was ineffective for failing to raise and litigate this claim on direct appeal.

The issue of Appellant's intoxication has been fully and finally litigated. In *Fisher III*, 741 A.2d at 1246–47 (citation omitted), this Court stated:

> Finally, Appellant argues that trial counsel was ineffective for failing to present evidence that Appellant's intoxicated state at the time of the murder resulted in his inability to fully appreciate the nature of his acts. We disagree. At the post-trial motion hearing, Appellant testified that he consumed a number of drugs on the day of the murder, including heroin and methamphetamine. The Sentencing Code permits a defendant to prove as a mitigating circumstance that his "capacity . . . to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired." 42 Pa.C.S. § 9711(c)(3).

> Despite Appellant's claim that he was in a "drug-induced frenzy," two expert reports solicited by prior defense counsel indicated that Appellant's capacity was not diminished

on the day of the murder. Counsel cannot be deemed ineffective for failing to pursue a claim of diminished capacity where the psychiatric records indicate that that theory was unsupportable. Moreover, at the post-trial motion hearing, Appellant's counsel testified that Appellant continued to maintain his innocence even during the penalty phase. N.T. 1/20/98 at 29–30. Clearly, presenting evidence regarding Appellant's inability to appreciate the criminality of his conduct would have been inconsistent with Appellant's claim of innocence.

A petitioner cannot obtain post-conviction review of claims previously litigated by alleging ineffective assistance of prior counsel and presenting new theories of relief to support previously litigated claims. *Bracey; Porter.*

Appellant next claims that he was denied his state and federal constitutional rights to due process and a fair penalty hearing when the court failed to dismiss jurors who were exposed to outside information regarding his case and that all prior counsel were ineffective for failing to raise and litigate this claim at all prior stages of these proceedings. He alleges that a potential juror, Kevin Kulp, discussed outside knowledge of Appellant's case with two other potential jurors, Kristen Murphy and Jennifer Feulner. Kulp was dismissed for cause. Murphy and Feulner were not.

The trial court questioned Murphy and Feulner during *voir dire* regarding their discussions with Kulp. Murphy described Kulp's remarks about the case, and stated that she would pay no attention to what he said. Asked whether she had formed a fixed opinion about the sentence to be imposed, she answered, "I know nothing about the details. I couldn't form an opinion either way." N.T. Voir Dire, 6/19/97, at 145–48. Feulner, likewise, was questioned about Kulp's influence. She recalled nothing Kulp said specifically, and also said she would be impartial. The test for determining whether a prospective juror should be dismissed for cause is whether he or she is willing and able to eliminate the influence of any knowledge of the case and render a verdict according to the evidence, and this is to be determined on the basis of demeanor as well as

the answers to the questions. *Commonwealth v. Bridges,* 563 Pa. 1, 757 A.2d 859, 873 (2000). Based on the record in this case, there is no indication that Appellant was denied a fair and impartial jury at his third sentencing.

■ Appellant argues that he was entitled to post-conviction relief from his conviction and sentence because of the cumulative effect of the errors contained in this petition and litigated in prior proceedings. He cites no Pennsylvania cases to support his proposition of cumulative ineffectiveness. We find no merit in his argument. *Commonwealth v. Rompilla,* 554 Pa. 378, 721 A.2d 786, 795 (1998) (where individual claims of error fail for lack of merit, there could be no cumulative prejudicial effect when there was no harm in the first place).

■ Appellant's final argument is that all prior counsel were ineffective for failing to raise the issues presented in Fisher's amended petition for post-conviction relief at all prior stages of this case.

This blanket allegation of layered ineffectiveness is necessary to preserve issues for review when they would otherwise be deemed waived pursuant to 42 Pa.C.S. §§ 9543(a)(3) and 9544(b). *See Commonwealth v. Miller,* 746 A.2d at 598 n. 3 (citing *Commonwealth v. Chmiel,* 536 Pa. 244, 639 A.2d 9 (1994)). As we have found no merit in the underlying issues or that the claims have been previously litigated, there is no basis for a finding of ineffectiveness. *Commonwealth v. Basemore,* 560 Pa. 258, 744 A.2d 717, 738 (2000).

Returning to the first yet ultimate issue stated by Appellant, he claims the PCRA court erred by denying his petition for post-conviction relief. Based on our thorough review of the record and Appellant's arguments, we hold that it was not error to deny post-conviction relief.

Accordingly, the judgment of the PCRA court is affirmed.

Justice CAPPY, Justice NIGRO and Justice SAYLOR file concurring opinions.

Justice CASTILLE files a concurring and dissenting opinion in which Justice EAKIN joins.

Justice CAPPY, concurring.

I cannot join the majority opinion to the extent that it reviews Appellant's arguments as claims of trial court error. Appellant presents some of his claims in terms of trial court error and the majority opinion addresses those claims in kind. I cannot join the merits analysis as to those claims, since Appellant failed to comply with the *Pierce*[1] standard of ineffectiveness and thus, such claims are waived. *See, e.g., Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693 (1998)(eliminating relaxed waiver in capital cases for purposes of collateral review).

In all other respects, I join the majority opinion.

Justice NIGRO, concurring.

I concur in the result. I write separately, however, to note that I, like Justice Cappy, believe that Appellant's claims of straight trial court error are waived and therefore, not subject to review on the merits. *See Commonwealth v. Ford,* 809 A.2d 325, 329 (Pa.2002) (opinion announcing judgment of the Court); *Commonwealth v. Bracey,* 568 Pa. 264, 795 A.2d 935, 939–40 (2001).

Justice SAYLOR, concurring.

Although I concur in the result, I believe that certain of Appellant's claims warrant additional elaboration.

In this regard, Appellant challenges the propriety of the trial court's use of an example to illustrate reasonable doubt, specifically, a husband and wife arguing over the advantages and disadvantages of enrolling their child in a private school. The analogy concludes with the trial court explaining that, if after weighing the various concerns, you decide to send the child to private school, "[i]t would be at that point, after you had come to that firm conclusion, you had done something about it, that you would have gone beyond reasonable doubt." I recognize that the trial court has broad discretion in phrasing its instructions, provided that, upon review of the charge

1. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).

as a whole, it clearly, adequately and accurately informs the jury on the law. *See Commonwealth v. Prosdocimo*, 525 Pa. 147, 150, 578 A.2d 1273, 1274 (1990). Here, however, the illustration attempted to draw a parallel between making a future personal decision and deciding whether facts offered by the Commonwealth surrounding a past incident were sufficiently proven beyond a reasonable doubt. Apart from the fact that such analogy was inapt, it suggested a preponderance of the evidence weighing process, obfuscating the applicable burden of proof. While the Court has not prescribed a particular charge on reasonable doubt, *see Commonwealth v. Williams*, 432 Pa. 557, 561, 248 A.2d 301, 303 (1968) (plurality opinion), the subcommittee note following the suggested instruction indicates that it is "intentionally brief," as a more elaborate definition may confuse a jury. *See* Pa. SSJI (Crim) 7.01 subcomm. note (citing *Commonwealth v. Del Giorno*, 303 Pa. 509, 154 A. 786 (1931)).

Significantly, other jurisdictions have cautioned against the use of analogies or illustrations to explain reasonable doubt, reasoning that such examples tend to mislead the jury, trivialize its responsibility, and understate the burden of proof. *See generally United States v. Pinkney*, 551 F.2d 1241, 1244 & n. 9 (D.C.Cir.1976) (collecting cases). Moreover, most people do not make private decisions based upon a reasonable doubt standard, *see generally Commonwealth v. Ferreira*, 373 Mass. 116, 364 N.E.2d 1264 (1977), as "[d]eciding the wisdom of future action involves a different type of judgment than that used in deciding whether something did or did not happen." *Bumpus v. Gunter*, 452 F.Supp. 1060, 1062 (D.Mass.1978).[1] Indeed, individuals often have minimal information upon which to base important future decisions, and nevertheless act despite reasonable doubts. *See generally* Robert C. Power, *Reasonable and Other Doubts: The Problem of Jury Instruc-*

1. Although the District Court in *Bumpus* determined that the use of an analogy by the state court judge in his jury instructions amounted to a constitutional error, but that the error was harmless, the Court of Appeals disagreed with this analysis, concluding that, while the illustration was flawed and while the jurors may have been confused, the error did not deprive the defendant of due process. *See Bumpus v. Gunter*, 635 F.2d 907, 913 (1st Cir.1980).

*tions,* 67 TENN. L.REV. 45, 80 (1999). A jury may also be inclined to accord undue weight to an example, finding it easier to understand, and, during deliberations, may simply compare a defendant's conduct with the example. *See generally State v. Cruz,* 33 Conn.App. 849, 639 A.2d 534, 538 (1994) (citing *People v. Shepherd,* 63 Mich.App. 316, 234 N.W.2d 502 (1975)). In light of such authority, therefore, I would conclude that Appellant's claim is of arguable merit.

With respect to prejudice, Appellant argues that errors involving the reasonable doubt standard can never be harmless. *See Commonwealth v. Bishop,* 472 Pa. 485, 491, 372 A.2d 794, 797 (1977); *Commonwealth v. Salameh,* 421 Pa.Super. 320, 326, 617 A.2d 1314, 1317 (1992). While such assertion may be accurate as a matter of direct review, in this case, the claim is presented in the form of a collateral attack and governed by an ineffectiveness standard. Appellant must therefore demonstrate that counsel's omission, namely, his failure to object, had an actual adverse effect on the outcome of the proceedings, that is, that there is a reasonable probability the verdict would have been different absent counsel's alleged ineffectiveness. *See Commonwealth v. Howard,* 538 Pa. 86, 99–100, 645 A.2d 1300, 1307–08 (1994) (differentiating the harmless error standard on direct appeal from prejudice in collateral review and explaining that "it is not axiomatic that what can never be harmless error by the trial court equates to ineffective assistance of counsel"). Here, although the use of an illustration, in my view, constituted error, the court provided correct definitions of reasonable doubt both prior to and following the example, and the evidence of Appellant's guilt was compelling. Thus, I would conclude that Appellant has failed to demonstrate prejudice sufficient to entitle him to relief.

My remaining concern is with respect to Appellant's claim that appellate counsel rendered ineffective assistance in failing to raise as an issue the trial court's ruling precluding evidence of residual doubt during the re-sentencing proceeding. Appellant argues that such ruling violated his constitutional right to testify and to present evidence in mitigation. The majority

resolves this issue by noting that a capital defendant does not have a constitutional right to testify to his innocence in the penalty phase of a trial, *see Commonwealth v. Stokes*, 532 Pa. 242, 263, 615 A.2d 704, 715 (1992) (plurality opinion), and that Appellant is not entitled to relief merely because counsel's strategy at the sentencing proceeding was unsuccessful.

As trial counsel attempted to introduce evidence of residual doubt, and the claim is directed at appellate counsel's effectiveness for failing to pursue such issue on appeal, I do not believe that the issue should be dismissed as one implicating reasonable trial strategy. I recognize, nevertheless, that the United States Supreme Court has ruled that a capital defendant does not have a constitutional right to have the jury instructed on residual doubt, *see Franklin v. Lynaugh*, 487 U.S. 164, 172–73, 108 S.Ct. 2320, 2327, 101 L.Ed.2d 155 (1988) (plurality opinion), reasoning that such doubts do not implicate a defendant's character, record, or the circumstances of the offense, and a constitutional right to rely upon residual doubts is "arguably inconsistent with the common practice of allowing penalty-only trials on remand of cases where a death sentence—but not the underlying conviction—is struck down on appeal." *See id.* at 173 & n. 6, 108 S.Ct. at 2327 & n. 6.[2] The plurality in *Franklin* did not explain why, as a matter of Eighth Amendment jurisprudence, residual doubts do not implicate the circumstances of the offense.[3] Similarly, in *Stokes*, a plurality of this Court, without elaboration, deemed testimony in the penalty phase regarding the defendant's guilt irrelevant. *See Stokes*, 532 Pa. at 263, 615 A.2d at 715. I

---

**2.** It is also noteworthy that the plurality in *Franklin* observed that even if a right to present residual doubt evidence were discerned from the Eighth Amendment, no limitation had been placed upon the defendant in arguing residual doubts to the sentencing jury, and the jury was not precluded from consideration of such issue. *See id.* at 174, 108 S.Ct. at 2327.

**3.** In a concurring opinion, Justice O'Connor, joined by Justice Blackmun, reasoned that such doubt is not a fact about the circumstances of the offense, but rather, "a lingering uncertainty about facts, a state of mind that exists somewhere between 'beyond a reasonable doubt' and 'absolute certainty,'" and that there is no requirement of proof of guilt to an absolute certainty for purposes of imposing the death penalty. *Id.* at 188, 108 S.Ct. at 2335 (O'Connor, J., concurring).

would not, however, treat such authority as foreclosing consideration of this issue on other grounds.

In this regard, the text of the catch-all mitigator provides:

. **(e) Mitigating circumstances.**-Mitigating circumstances shall include the following:

\* \* \*

(8) Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense.

42 Pa.C.S. § 9711(e)(8). In contrast to the statutory language introducing aggravating circumstances, which states that such circumstances "shall be limited to the following," *see* 42 Pa. C.S. § 9711(d), the list of mitigating circumstances is not prefaced with similarly limiting language. Of additional significance, Section 9711(a)(2) of the Sentencing Code, 42 Pa. C.S. § 9711(a)(2), provides that "evidence may be presented as to any other matter that the court deems relevant and admissible on the question of the sentence to be imposed." *Id.; see also Commonwealth v. Means,* 565 Pa. 309, 324–25, 773 A.2d 143, 152–52 (2001) (plurality opinion) (concluding that, pursuant to Section 9711(a)(2), relevant evidence is not limited to statutory aggravators and mitigators).[4] Notwithstanding the United States Supreme Court's Eighth Amendment interpretation, as a matter of statutory interpretation, I believe that, at least in certain instances, evidence of residual doubt may be viewed as constituting a circumstance of the offense,[5] and, in any event, such evidence is arguably admissible as a non-statutory mitigating circumstance. *Cf. United States v. Davis,* 132 F.Supp.2d 455, 464, 468 (E.D.La.2001) (permitting residual doubt evidence to be introduced at defendants' re-sentencing

4. Although I do not subscribe to an open-ended construction of Section 9711, *see id.* at 326, 773 A.2d at 160 (Saylor, J., concurring), the Court's rulings permitting the introduction of non-statutory aggravation evidence in *Means* and *Commonwealth v. Trivigno,* 561 Pa. 232, 254, 750 A.2d 243, 254 (2000) (plurality opinion), support similar allowance with respect to evidence in mitigation.

5. Indeed, the catch-all mitigator was added to expand the scope of evidence that could be presented in mitigation. *See* Legis. J.—Senate at 722 (Jun. 26, 1978).

hearing as a non-statutory mitigating circumstance under the federal death penalty statute). Moreover, a number of the statutory aggravators directly implicate a defendant's guilt or culpability, for example, whether the killing was committed while in the perpetration of a felony. Consequently, depending upon the nature of the aggravator, a defendant's testimony concerning his role in committing the offense could be relevant.[6] In addition, residual doubt concerning a defendant's culpability following, for instance, an unsuccessful claim of self-defense may be perceived as qualitatively different than that associated with a disbelieved alibi. Furthermore, the United States Supreme Court has recognized that residual doubt may be an effective mitigator, see Lockhart v. McCree, 476 U.S. 162, 181, 106 S.Ct. 1758, 1769, 90 L.Ed.2d 137 (1986),[7] and this Court has similarly acknowledged that emphasis of residual doubt may constitute a reasonable penalty-phase strategy. See Commonwealth v. Meadows, 567 Pa. 344, 359, 787 A.2d 312, 320–21 (2001) (plurality opinion).

Other jurisdictions have been divided on the issue. Although state courts tend to deem evidence of residual doubt irrelevant,[8] some courts (most notably federal courts) permit consideration,[9] while others decline to instruct the jury on residual doubt, but allow arguments respecting the issue.[10] In my view, Appellant's claim implicates issues of statutory inter-

6. Certain of the mitigators also bear upon guilt or culpability related to a defendant's mental state. See, e.g., 42 Pa.C.S. § 9711(e)(2), (3).

7. Such evidence has also been described as "the most powerful 'mitigating' fact." Stephen P. Garvey, Aggravation and Mitigation in Capital Cases: What do Jurors Think?, 98 COLUM L.REV 1538, 1563 (1998) (analyzing data from interviews of jurors in forty-one capital cases).

8. See, e.g., Preston v. State, 607 So.2d 404, 411 (Fla.1992); State v. Josephs, 174 N.J. 44, 803 A.2d 1074, 1116–17 (2002); Evans v. State, 112 Nev. 1172, 926 P.2d 265, 284–85 (1996); State v. Fletcher, 354 N.C. 455, 555 S.E.2d 534, 544 (2001); State v. McGuire, 80 Ohio St.3d 390, 686 N.E.2d 1112, 1122–23 (1997).

9. See, e.g., Davis, 132 F.Supp.2d at 458–62 (collecting cases); State v. Hartman, 42 S.W.3d 44, 59 (Tenn.2001).

10. See, e.g., People v. Cox, 53 Cal.3d 618, 280 Cal.Rptr. 692, 809 P.2d 351, 384 (1991); cf. Shelton v. State, 744 A.2d 465, 495–96 (Del.1999) (permitting defendant to discuss or argue in allocution facts respecting guilt).

pretation, public policy, and consideration as a matter of Pennsylvania Constitutional jurisprudence, which are best addressed upon proper framing and full briefing by the parties. Other than asserting federal constitutional guarantees, however, Appellant's argument focuses upon an alleged inconsistency between the Court's decisions in *Stokes* and *Meadows*. Further, to the extent that reliance upon residual doubt is to be permitted in the penalty phase of a capital case, reasonable limitations are implicated, since, having established a defendant's guilt, the Commonwealth should not be compelled to re-establish it for purposes of sentencing, particularly, where, as here, the case has been remanded for a re-sentencing hearing. *See generally Buford v. State*, 403 So.2d 943, 953 (Fla.1981) (stating that, "[a] convicted defendant cannot be 'a little bit guilty[;]' [i]t is unreasonable for a jury to say in one breath that a defendant's guilt has been proved beyond a reasonable doubt and, in the next breath, to say someone else may have done it, so we recommend mercy"). Here, I do not view the direct testimony of Appellant to the effect that he did not commit the crime as the type of residual doubt presentation that should be permitted,[11] particularly in the context of a re-sentencing, as it would have the effect of requiring a re-trial of the guilt phase.[12]

Moreover, I do not believe that Appellant has demonstrated prejudice as a result of the trial court's limitation. At the PCRA hearing, trial counsel acknowledged Appellant's desire to testify at the re-sentencing that he did not commit the crime; however, counsel also explained that he sought to,

11. Notably, there was no formal offer of proof as to Appellant's testimony.

12. While there may be practical reasons for differentiating re-sentencing proceedings on this basis, I would not necessarily craft a general rule on such grounds, since it may also be argued that a defendant should not lose the benefit of any residual doubts because, through no fault of his own, an error occurred at the initial proceeding. However, it is also significant that, although the defendant in a re-sentencing proceeding "may lose whatever advantage inheres in the 'residual doubts' that the original jury may have had regarding [his] guilt, the [Commonwealth] may also lose whatever 'advantage' inheres in the emotional impact that often surrounds the initial guilt phase." *State v. Biegenwald*, 106 N.J. 13, 524 A.2d 130, 160 (1987) (citations omitted).

*inter alia*, challenge the aggravating circumstance by arguing that Appellant did not kill the victim because she was a Commonwealth witness, but rather, that the victim was Appellant's girlfriend, and that the killing occurred because of a lover's quarrel. As such argument would have been inconsistent with Appellant's testimony that he did not commit the crime, the trial court's ruling would appear to have enhanced the viability of the defense theory concerning this aggravator.

Justice CASTILLE, concurring and dissenting.

I join in those parts of the lead opinion analyzing (1) appellant's argument that he was denied an opportunity to develop his claims below; and (2) those of appellant's claims which were previously litigated under the PCRA. I also join in the ultimate mandate affirming the denial of PCRA relief. However, I respectfully dissent from the lead's employing relaxed waiver on this PCRA appeal to reach numerous waived claims.

Appellant raises a number of issues as claims of trial court error. Since those claims could have been raised on appellant's direct appeal, they are explicitly waived under the PCRA. 42 Pa.C.S. § 9544(b) (An issue is waived under the PCRA "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in a prior state postconviction proceeding"). The lead opinion nevertheless reviews the waived claims on the merits. It apparently does so because it deems appellant's "blanket allegation of layered ineffectiveness" as preserving those claims that "would otherwise be deemed waived pursuant to 42 Pa.C.S. §§ 9543(a)(3) and 9544(b)." Op. at 773.

In my view, appellant's boilerplate, layered claim of counsel ineffectiveness does not undo the PCRA waiver provision and make appellant's waived claims of trial court error reviewable. Those claims are unequivocally waived under the PCRA. The only versions of these claims that would be reviewable under the PCRA are appellant's distinct, substantive constitutional claims sounding in the ineffective assistance of his previous counsel. By reaching appellant's waived claims on the merits,

134

the lead opinion employs a form of a relaxed waiver which subverts the statute and is contrary to our decision in *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693 (1998). *See Commonwealth v. Marshall,* 810 A.2d 1211, 2002 WL 31630168 (Pa.2002) (Castille, J., concurring and dissenting); *Commonwealth v. Meadows,* 567 Pa. 344, 787 A.2d 312 (2001) (Castille, J., concurring).

I would reject appellant's claims of counsel ineffectiveness because they are boilerplate and because, as the lead opinion notes, the underlying assertions lack even arguable merit.

Justice EAKIN joins this concurring and dissenting opinion.