J-S12004-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                           :             PENNSYLVANIA
                                           :
            v.                            :
                                           :
                                           :
TYREE CALVIN HARGROVES       :
                                           :
          Appellant             :    No. 1759 EDA 2020

Appeal from the PCRA Order Entered August 5, 2020
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0000315-2017

BEFORE: LAZARUS, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                   Filed: June 10, 2021

Tyree Calvin Hargroves appeals from the trial court's order denying, after a hearing, his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Upon review, we affirm.

The trial court summarized the facts underlying the instant case as follows:

> In December 2016, a bench warrant was issued for the Defendant, Tyree Hargroves, for failure to appear at an unrelated proceeding before the Monroe County Court of Common Pleas. Officers with the Pocono Mountain Regional Police Department (PMRPD), who were familiar with the Defendant, attempted to execute on that warrant and went to the area near 9157 Brandywine Drive in Coolbaugh Township, which was known to be the residence of the Defendant's girlfriend. While conducting surveillance, Detective/Corporal Lucas Bray observed the Defendant on the porch of the residence shoveling snow and in the driveway clearing snow from a running vehicle. Detective/Corporal Bray continued surveillance while he awaited assistance from another officer. Before the arrival of additional officers, the Defendant left the residence in the vehicle. Detective/Corporal Bray followed the Defendant and observed him stop the vehicle in front of a

residence at 2415 Winding Way in Coolbaugh Township. At that location, Detective/Corporal Bray observed a male, later identified as Joseph Nemeth, walk to the driver's side of the Defendant's vehicle, at which time a hand[-]to[-]hand transaction occurred between Nemeth and the Defendant and Nemeth then returned to his residence. As the Defendant drove away, additional officers finally arrived and a traffic stop was initiated on the Defendant's vehicle a short distance from the Nemeth residence to detain the Defendant on the bench warrant.

At the time of the traffic stop, the Defendant was on a video phone call with his girlfriend. The cell phone that the Defendant was using for that call was seized and later searched pursuant to a search warrant. In addition to the cell phone, the Defendant was in possession of three (3) $100 bills folded together outside his wallet and an additional $117. Officers also observed rubber bands inside the vehicle consistent with what they believed were used to bundle heroin. Utilizing his K-9 partner, Niko, PMRPD Corporal Matt Nero conducted a K-9 sniff of the Defendant's vehicle. K-9 Niko alerted to the driver's side of the vehicle for the scent of drugs. No drugs were ultimately found in the vehicle; rather, only the rubber bands were found in and around the driver's side of the vehicle.

When Detective/Corporal Bray confronted the Defendant about the hand to hand transaction he observed on Winding Way, the Defendant admitted to Detective/Corporal Bray that the $300 came from Nemeth, but alleged it was a loan and denied it was for the sale of drugs. When Detective/Corporal Bray and Corporal Nero questioned Nemeth regarding the hand to hand transaction, Nemeth and his girlfriend admitted the Defendant was their drug dealer and they arranged for him to take the $300 to purchase heroin and cocaine. Detective/Corporal Bray reviewed Nemeth's cellular phone and observed communications consistent with Nemeth's statements. The subject communications happened within a short time before the hand[-]to[-]hand exchange was observed. Following the execution of a search warrant on the Defendant's phone, Detective/Corporal Bray located the same communications Nemeth admitted to and contained on Nemeth's phone.

This evidence was submitted at trial through testimony of Nemeth, Monroe County District Attorney's Office Detective Brian Webbe, Corporal Nero and Detective/Corporal Bray, as well as through Nemeth[s'] and the Defendant's cell phones.

Trial Court Opinion, 1/30/18, at 2-3.

After a two-day jury trial held on October 5-6, 2017, Hargroves was found guilty[1] of attempted possession with intent to deliver heroin,[2] attempted possession with intent to deliver cocaine,[3] criminal conspiracy,[4] and criminal use of a communication facility.[5]  On November 20, 2017, the court sentenced Hargroves to 24-48 months' imprisonment for possession (heroin), to be followed by a consecutive sentence of 12-24 months' incarceration for possession (cocaine), a consecutive sentence of 12-24 months' incarceration for criminal use of a communication facility, and a concurrent sentence of 12-24 months' imprisonment for conspiracy—for an aggregate sentence of 48-96 months of imprisonment.[6]  Hargroves filed post-trial motions, which the trial court denied on January 30, 2018.  Hargroves filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  On February 19, 2019, our Court affirmed Hargroves' judgment of sentence.  *See Commonwealth v. Hargroves*, 685 EDA 2018 (Pa. Super. filed Feb. 19, 2019) (unpublished memorandum decision).

_____

[1] Hargroves was acquitted of possession of drug paraphernalia.

[2] 35 P.S. § 780-113(a)(30).

[3] *Id.*

[4] 18 Pa.C.S. § 903.

[5] 18 Pa.C.S. § 7512.

[6] Hargroves also received 279 days' credit for time served.

- 3 -

On October 21, 2019, Hargroves filed a *pro se* PCRA petition alleging trial counsel's ineffectiveness. On October 28, 2019, the trial court appointed Robert A. Saruman, Esquire, as PCRA counsel; counsel filed an amended petition on January 9, 2020. After several delays and continuances due to complications in transporting Hargroves to court amid the COVID-19 pandemic, a hearing was held on Hargroves' petition on June 27, 2020. On August 5, 2020, the court denied Hargroves' petition. He filed a timely appeal and court-ordered Rule 1925(b) statement. Hargroves presents the following issues for our consideration:

(1)     Whether the PCRA court erred and abused its discretion by failing to find that trial counsel was ineffective for failing to object to the introduction of an expert in drug trafficking[,] the same individual who was also a fact witness in the same case, thereby increasing the witness'[s] credibility in the eyes of the jury.

(2)     Whether the PCRA court erred and abused its discretion by failing to find that trial counsel was ineffective for failing to object to statements in the Commonwealth's closing indicating that failing to convict the defendant would be tantamount to ignoring the opiate epidemic.

Appellant's Brief, at 4.

"In reviewing the denial of PCRA relief, we examine whether the PCRA court's determinations are supported by the record and are free of legal error." ***Commonwealth v. Natividad***, 200 A.3d 11, 25 (Pa. 2019) (citation omitted). ***See also Commonwealth v. Pier***, 182 A.3d 476, 478 (Pa. Super. 2018) (same).

Each of Hargroves' issues on appeal concerns the effectiveness of his trial counsel.[7] In his first issue, Hargroves contends that counsel was ineffective for not objecting to the Commonwealth using the affiant as an expert witness in drug distribution "where the underlying fact pattern was that [Hargroves] had merely taken money from a friend to [] buy drugs" and where the prosecution's strategy was to impermissibly "paint Hargroves' action in light of a wider drug conspiracy in the community." Appellant's Brief, at 8.

"A trial court has broad discretion to determine whether evidence is admissible and a trial court's ruling on an evidentiary issue will be reversed only if the court abused its discretion." ***Commonwealth v. Cook***, 676 A.2d 639, 647 (Pa. 1996). "Accordingly, a ruling admitting evidence 'will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support [as] to be clearly erroneous.'" ***Commonwealth v. Minich***, 4 A.3d 1063, 1068 (Pa. Super. 2010).

_____

[7] "To prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must prove each of the following: '(1) the underlying legal claim was of arguable merit; (2) counsel had no reasonable strategic basis for h[er] action or inaction; and (3) the petitioner was prejudiced — that is, but for counsel's deficient stewardship, there is a reasonable likelihood the outcome of the proceedings would have been different.'" ***Pier***, 182 A.3d at 478. An ineffectiveness claim must be denied if any of those prongs are not met. ***See Commonwealth v. Little***, 246 A.3d 312, 323 (Pa. Super. 2021). Moreover, "[c]ounsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***See Commonwealth v. Epps***, 240 A.3d 640, 645 (Pa. Super. 2020). Counsel is presumed to be effective and the petitioner bears the burden of proving otherwise. ***Id.***

In **Commonwealth v. Huggins**, 68 A.3d 962 (Pa. Super. 2013), also a drug case, our Court addressed the following issue of first impression: "whether the same witness may be proffered to testify regarding both lay and expert opinion without usurping the jury's fact-finding function." **Id.** at 966. In **Huggins**, the trial court permitted a drug agent to offer opinion testimony as both a lay witness and as an expert, where the agent reviewed legally intercepted telephone conversations, deciphered the drug jargon used by the parties to the conversations, and testified regarding the investigation, in general, based upon his personal perceptions. **Id.** at 968. In addition, during direct examination, the prosecutor asked the agent whether he believed the telephone dialogue was drug-related and whether it was his opinion that the call related to narcotics distribution. **Id.** at 967-68. Because the trial judge carefully and frequently instructed the jury regarding the dual purposes of the agent's lay and expert testimony and reminded them that they were solely responsible for making credibility determinations, **id.** at 973, the Court concluded that "the jury was able to differentiate between the two types of evidence presented by [the a]gent . . . [where] the trial court employed additional safeguards to ensure that the jury understood its function in evaluating the evidence." **Id.** at 974.

At Hargroves' trial, Officer Bray testified as both a fact witness, regarding what he had observed and done during the drug investigation, and as an expert witness in the field of drug distribution. Specifically, as a fact witness, Officer Bray testified to observing Hargrove on the porch of the

residence shoveling snow and in the driveway clearing snow from a running vehicle. N.T. Jury Trial, 10/5/17, at 115. Officer Bray also conducted additional surveillance, while waiting for other officers to arrive on the scene, and observed Hargroves drive away from the residence in a vehicle, stop the vehicle in front of another residence, saw another male approach the driver's side of Hargroves' vehicle and conduct a hand-to-hand transaction with Hargroves, and then watched that individual return to the residence as Hargroves drove away. *Id.* at 117-19.

Officer Bray also testified as an expert witness, after being certified, *see id.* at 152, 161, regarding evidence that indicated Hargroves possessed the drugs with the intent to deliver them. *Id.* at 154-80. Specifically, Officer Bray noted that the following evidence was indicative of possession with intent to deliver: (1) three $100 bills folded together outside of Hargroves' wallet and an additional $117; (2) rubber bands consistent with those used to bundle heroin inside Hargroves' vehicle; and (3) content of text conversations from Hargroves' and Nemeth's cell phones. *Id.* at 161-79.

Similar to the agent in *Huggins*, in the instant case the Commonwealth first sought to admit Officer Bray as a factual witness, *id.* at 107-112, and then, only later, did the assistant district attorney ask additional questions regarding his professional qualifications to have Officer Bray qualified as an expert in the field of trafficking in controlled substances. *See* N.T. Jury Trial, 10/5/17, at 152-61. Moreover, the trial judge carefully and clearly instructed the jury regarding the differing roles of lay and expert witnesses, *see id.*,

10/6/17, at 43-44, and "the fact that the lawyers and [judge] may have referred to certain witnesses at a point in time as an expert and that the witness may have specialized knowledge or skill does not mean that his testimony or opinions are right." *Id.* at 44. Finally, the court instructed the jury several times that, as the factfinder, it alone determined the credibility of and weight to be accorded witness testimony. *Id.* at 37-30, 45.

After a thorough review of the record, specifically the notes of testimony from trial and the charge to the jury, we are confident that "the jury was able to differentiate between the two types of evidence presented by [the a]gent . . . [where] the trial court employed additional safeguards to ensure that the jury understood its function in evaluating the evidence." *Huggins*, *supra* at 974. Accordingly, we do not believe that the trial court abused its discretion in permitting Officer Bray to provide testimony as both a lay and expert witness. *Cook*, *supra*. Thus, we find no merit to Hargroves' underlying ineffectiveness claim.[8] *Pier*, *supra*.

_____

[8] In fact, trial counsel testified at Hargroves' PCRA hearing that, had he objected to Office Bray's dual-purpose testimony, "it would have brought some attention to something that may not necessarily need to be brought to the jury and emphasizing this." N.T. PCRA Hearing, 6/29/20, at 8 ("Once they started questioning and he's saying how he's an expert on things, and then if I start objecting, you know, I think it puts in the jury's mind that, Oh, he wants to keep this out, maybe it is something we remember, even if the judge [] tell[s] us not to remember it."). Counsel's strategy in not wanting to object and draw attention to Officer Bray testifying as an expert was reasonable. *Pier*, *supra*. *See* N.T. PCRA Hearing, 6/29/20, at 9 (trial counsel agreeing that raising objection to Officer Bray's testimony would have been more detrimental than beneficial to Hargroves).

*(Footnote Continued Next Page)*

In his second issue, Hargroves contends that counsel was ineffective for failing to object to the prosecutor's closing argument where counsel indicated "that Hargroves was a symptom of a larger drug epidemic and that to address such epidemic the jury needed to convict Hargroves." *Id.* at 9. Hargroves claims that these improper comments "go[] beyond accepted prosecutorial argument to the point of creating a focus on issues other than those presented for the factfinder to make their determination." *Id.*

During closing arguments, the assistant district attorney (ADA) made comments regarding the heroin epidemic in Pennsylvania. Specifically, the ADA stated during closing arguments:

> At the end of the day **you have to look at the charges, the law**, and say to yourself[,] **in this case drug dealing is the problem**; drug addiction is the problem. [Hargroves], by his conduct, is the problem**. And by rendering the true verdict . . . you're holding him accountable for that**. **It's not a solution to our drug epidemic**, but it's part of the solution. The law requires you to hold him accountable for that.

N.T. Jury Trial, 10/6/17, at 28, 30-31 (emphasis added).

> Our Court has previously recognized that:
>
> "[n]ot every unwise remark made by an attorney amounts to misconduct or warrants the grant of a new trial." *Commonwealth v. Carson*, [] 913 A.2d 220, 242 (Pa. 2006). "Comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to

---

Moreover, the fact that the jury acquitted Hargroves of possession of drug paraphernalia demonstrates that he was not prejudiced by Officer Bray's expert testimony regarding the use of the rubber bands to hold bundles of heroin together. *Pier*, *supra*.

prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." ***Commonwealth v. Stokes***, [] 839 A.2d 226, 230 (Pa. 2003), quoting ***Commonwealth v. Fisher***, [] 813 A.2d 761, 768 (Pa. 2002).

Furthermore, according to the Pennsylvania Supreme Court in ***Commonwealth v. Chmiel***, [] 889 A.2d 501, 543-44 (Pa. 2005)]:

> In determining whether the prosecutor engaged in misconduct, courts must keep in mind that comments made by a prosecutor must be examined within the context of defense counsel's conduct. It is well[-]settled that the prosecutor may fairly respond to points made in the defense closing. A remark by a prosecutor, otherwise improper, may be appropriate if it is in [fair] response to the argument and comment of defense counsel. Moreover, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair.

***Commonwealth v. Collins***, [] 70 A.3d 1245, 1252-53 (Pa. Super. 2013) (brackets omitted).

Instantly, the trial court instructed the jury, both before opening and after closing arguments, that counsels' statements were not to be considered facts, but only argument. ***See*** N.T. Jury Trial, 10/5/17, at 9; ***id.*** at 10/6/17, 37-38. It is well-established that a jury is presumed to follow a trial court's instructions. ***Commonwealth v. Jones***, 668 A.2d 491, 504 (Pa. 1995). Moreover, Officer Bray testified that during his interview with the police, Hargroves admitted that heroin destroys lives. N.T. Jury Trial, 10/6/17, at 30.

We find the comments by the ADA were a fair representation of Hargrove's conduct being a part of this country's serious drug problem and a

response to the charges brought against him. *Cf. Commonwealth v. LaCava*, 666 A.2d 221, 236-37 (Pa. 1995) (defense counsel ineffective for failing to object to prosecutor's inflammatory and prejudicial comments to jury during penalty phase in capital case where statements "expanded the jury's focus from the punishment of appellant on the basis of one aggravating circumstance [] to punishment of appellant on the basis of society's victimization at the hands of drug dealers;" prosecutor's remarks, which consisted of references to drug dealers as "a leech on society . . . who "sucks the life blood out of our community," "wreck[s] the neighborhood," "are carrying their guns around . . . and shooting [them]," were intended to convince jury to sentence appellant to death as "form of retribution for the ills inflicted on society by those who sell drugs"). In addition, the jury was properly instructed to regard those comments as argument and not fact; we presume they followed the court's directives. *Jones*, *supra*. Accordingly, we conclude there was no prosecutorial misconduct, and, thus, counsel cannot be deemed ineffective for failing to object to the prosecutor's comments. *Pier*, *supra*.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/10/21