J-S41040-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :      IN THE SUPERIOR COURT OF
                                         :          PENNSYLVANIA

           Appellee           :

                              :

            v.                 :

                              :

KENNETH MALIK EVANS, III,      :

                              :

          Appellant        :      No. 1770 MDA 2018

Appeal from the PCRA Order Entered September 24, 2018
in the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-0004366-2013

BEFORE:    LAZARUS, J., MURRAY, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:   **FILED: SEPTEMBER 16, 2019**

Kenneth Malik Evans, III (Appellant) appeals from the order entered September 24, 2018, dismissing his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Counsel has filed a petition to withdraw and a brief pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988) and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). Upon review, we grant counsel's petition to withdraw and affirm the order of the PCRA court.

In January 2014, a criminal information was filed charging Appellant with one count of criminal homicide, stemming from the shooting of Shantique Goodson ("the victim") in the Sherman Hills Apartment Complex on November 11, 2013. Pertinent to this appeal, the evidence presented at trial established the following.

_____

* Retired Senior Judge assigned to the Superior Court.

[O]n the date in question, Tiara McDuffie ("McDuffie"), driving a white Jeep Cherokee with the victim as her passenger, drove into the Sherman Hills Apartment Complex. McDuffie did not park the car upon entering the complex because she saw Appellant in the complex. After seeing Appellant, the victim also told McDuffie not to park the vehicle. As a result, McDuffie cut across the parking lot and spun the car around to leave the area of the complex where Appellant was approaching. The two women headed to the apartment of their friend Jasmine Frazier ("Frazier") that was located within the complex.

After McDuffie stopped the Jeep near Frazier's apartment, Frazier approached the vehicle on the passenger side where the victim was sitting. The victim rolled the window down, and the parties engaged in a conversation. Moments later, Appellant aggressively approached the passenger side of the vehicle and addressed the victim. Appellant told the victim to get the "'F' out of the car." After the victim refused, Appellant reached for the handle of the passenger side door. The victim commented to Appellant: "didn't we discuss this yesterday?" Undeterred, Appellant pushed his left hand into the vehicle in an attempt to reach for the lock. The victim pushed Appellant's left hand away from the lock, and Appellant then put his right hand into the passenger side of the vehicle. With his right hand in the passenger side of the vehicle, Appellant shot the victim twice.

Frazier testified that while she was still leaning into the passenger side window, she saw Appellant shoot the victim in the lower abdomen. After the two gunshots were fired, McDuffie sped away. Appellant continued to fire several shots at the vehicle as McDuffie drove off, and Appellant then ran off between the buildings of the complex. McDuffie drove the victim to the Wilkes–Barre General Hospital emergency room.

At trial, McDuffie explained that the friendship between the victim and Appellant had deteriorated approximately a week prior to the shooting. While not entirely clear from the record what they were, McDuffie testified that there were "issues" existing between victim and Appellant in the days leading up to the victim's homicide. McDuffie testified that "leading up [to] this incident, things had got [*sic*] out of control to [*sic*] the friendship."

Dr. [Gary] Ross testified[, as an expert in the field of forensic pathology,] that the victim suffered two gunshot wounds. The first gunshot wound was to the victim's vulvar region. Dr. Ross provided the following explanation regarding whether this was a lethal gunshot wound:

> Not in and of itself. It certainly is a survivable wound, even though it's to the vulvar region, even though it bled very copiously. It did not bleed enough to have—in my opinion, it did not bleed enough to have caused death in and of itself. It is certainly a medically survivable injury.
>
> * * *
>
> [The victim] died as a result of a hemorrhage from multiple gunshot wounds. This wound contributed to that hemorrhage, so this wound contributed to her death.

Dr. Ross further explained that the second gunshot wound was to the victim's right thigh. Dr. Ross provided the following testimony regarding gunshot wound number two:

> [Dr. Ross:] Gunshot wound number two is lethal in and of it[self]. Gunshot wound number two went through the soft tissues of the thigh and tore major vessels of the right femoral artery, which is the major artery within the right leg and also the right femoral vein. This wound bled copiously and she died as a result of the extenuation of bleeding from this wound.
>
> [Commonwealth:] Is the femoral artery a vital part of the body?
>
> [Dr. Ross:] It is.
>
> [Commonwealth:] So [the victim] was shot in a vital part of the body, correct, Dr. Ross?
>
> [Dr. Ross:] Yes.

- 3 -

*Commonwealth v. Evans*, 144 A.3d 198 (Pa. Super. 2016) (unpublished memorandum at *3-4) (citations omitted).

Following a jury trial, Appellant was found guilty of first-degree murder, and on October 24, 2014, Appellant was sentenced to life imprisonment without the possibility of parole. This Court affirmed Appellant's judgment of sentence on March 14, 2016 and our Supreme Court denied his petition for allowance of appeal. *Evans*, *supra*, *appeal denied*, 145 A.3d 162 (Pa. 2016).

On July 20, 2017, Appellant *pro se* filed a PCRA petition asserting trial court error and ineffective assistance of trial counsel,[1] as well as arguing that the cumulative effect of counsel's ineffectiveness denied Appellant the right to a fair trial. *Pro se* PCRA Petition, 7/20/2017, at 3-11 (unnumbered). The PCRA court scheduled a hearing on Appellant's *pro se* petition, appointed Jeffery A. Yelen, Esquire as counsel, and permitted Attorney Yelen to file a supplemental petition if he deemed necessary. No supplemental petition was filed, and on August 14, 2018, the PCRA court held an evidentiary hearing. There, Appellant testified on his own behalf, raising the aforementioned issues, as well as arguing that the evidence was insufficient to support his conviction. N.T., 8/14/2018, at 12-14. In response, the Commonwealth called trial counsel to testify. On September 24, 2018, the

---

[1] Appellant was represented by co-counsel, Hugh Taylor, Esquire and John Pike, Esquire (collectively, "trial counsel"), at trial.

PCRA court filed a memorandum opinion and order, dismissing Appellant's petition.

Appellant, through counsel, timely filed a notice of appeal.[2] Subsequent to filing Appellant's notice of appeal, Attorney Yelen filed a motion for appointment of appellate counsel, seeking permission to withdraw and requesting the PCRA court appoint substitute counsel to represent Appellant on appeal. Motion for Appointment of Appellate Counsel, 10/24/2018. By order dated October 29, 2018, the PCRA court granted Attorney Yelen's motion and appointed Matthew P. Kelly, Esquire, who presently represents Appellant on appeal. Order, 10/29/2018.

In this Court, Attorney Kelly filed a ***Turner/Finley*** brief and an application to withdraw as counsel.[3] Thus, we must first determine if

---

[2] The PCRA court did not direct Appellant to file a concise statement pursuant to Pa.R.A.P. 1925(b). In lieu of an opinion, the PCRA court relied on its September 24, 2018 memorandum. ***See*** Statement in Lieu of Opinion, 12/21/2018.

[3] On June 10, 2019, Appellant filed a *pro se* response to Attorney Kelly's ***Turner/Finley*** brief, averring that he has "been subjected to a cascading form of ineffective assistance of counsel[.]" *Pro se* Response, 6/10/2019, at 3. Therein, Appellant argued that Attorney Yelen provided inadequate representation at Appellant's PCRA hearing and that Attorney Kelly's ***Turner/Finley*** brief was insufficient, as it merely "parrot[ed] the opinion of the PCRA court[.]" ***Id.*** For these reasons, Appellant requested this Court: (1) dismiss Attorney Kelly's motion to withdraw; (2) appoint new counsel; "and/or" (3) grant Appellant leave to file a *pro se* supplemental brief in support of his objection to Attorney Kelly's ***Turner/Finley*** brief. ***Id.*** at 12. For the reasons that follow, even assuming *arguendo* that Appellant has been subjected to a "cascading form" of ineffectiveness, because we find Appellant's issues are either not cognizable under the PCRA or wholly lacking merit, Appellant cannot prove he has been prejudiced by counsel's alleged

- 5 -

J-S41040-19

Attorney Kelly has complied with the technical requirements of **Turner** and **Finley**.

> … **Turner**/**Finley** counsel must review the case zealously. **Turner**/**Finley** counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no-merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.
>
> If counsel fails to satisfy the foregoing technical prerequisites of **Turner**/**Finley**, the court will not reach the merits of the underlying claims but, rather, will merely deny counsel's request to withdraw. Upon doing so, the court will then take appropriate steps, such as directing counsel to file a proper **Turner**/**Finley** request or an advocate's brief.
>
> However, where counsel submits a petition and no-merit letter that do satisfy the technical demands of **Turner**/**Finley**, the court — trial court or this Court — must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief. By contrast, if the claims appear to have merit, the court will deny counsel's request and grant relief, or at least instruct counsel to file an advocate's brief.

**Commonwealth v. Wrecks**, 931 A.2d 717, 721 (Pa. Super. 2007) (citations omitted).

After review, we are satisfied that Attorney Kelly has complied with the technical requirements of **Turner** and **Finley**. Therefore, we will consider

shortcomings and therefore, he is not entitled to relief. Thus, we decline to grant the relief requested by Appellant in his *pro se* response.

- 6 -

the substantive issues contained in Attorney Kelly's brief. On appeal, Attorney Kelly sets forth the following issues for our review, which we have reordered for ease of disposition.

> I. Whether the trial court erred in failing to instruct the jury on voluntary manslaughter.
>
> II. Whether there was sufficient evidence to convict Appellant for the crime of criminal homicide.
>
> III. Whether trial counsel [were] ineffective in representing [] Appellant.

*Turner*/*Finley* Brief at 1 (unnecessary capitalization omitted).

Initially, we note that Appellant's first two issues were raised previously by Appellant and addressed by this Court on direct appeal. *See Evans*, *supra*. It is well-settled that previously litigated claims are not cognizable under the PCRA. *See* 42 Pa.C.S. § 9544(a)(2)-(3) (An error is considered previously litigated if (1) "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue; or" (2) "has been raised and decided in a proceeding collaterally attacking the conviction or sentence."). Thus, Appellant is precluded from raising these claims again.

We now address the remaining issue, which challenges the effectiveness of trial counsel. Specifically, Appellant claims trial counsel were ineffective for: (1) "allowing two detectives to testify as experts" at Appellant's trial about gunshot residue (GSR) collected after the shooting; (2) failing to call, as defense witnesses, the emergency room physicians who

treated the victim; and (3) failing to impeach Commonwealth witnesses, Frazier and McDuffie. Appellant also argues these cumulative errors committed by counsel denied him fair trial. *Turner*/*Finley* Brief at 4-7. We address these individual claims mindful of the following.

"Our standard of review of a [] court order granting or denying relief under the PCRA calls upon us to determine 'whether the determination of the PCRA court is supported by the evidence of record and is free of legal error.'" ***Commonwealth v. Barndt***, 74 A.3d 185, 192 (Pa. Super. 2013) (quoting ***Commonwealth v. Garcia***, 23 A.3d 1059, 1061 (Pa. Super. 2011)).

"It is well-established that counsel is presumed effective, and the defendant bears the burden of proving ineffectiveness." ***Commonwealth v. Martin***, 5 A.3d 177, 183 (Pa. 2010). To overcome this presumption, Appellant must show each of the following: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." *Id.* Appellant's claim will be denied if he fails to meet any one of these three prongs. *Id.*

With respect to his first claim, Appellant argues trial counsel were ineffective for calling two detectives from the Wilkes-Barre City Police Department, Detective David Sobocinski and Detective Ronald Foy, to testify

- 8 -

about GSR that may have been collected from Appellant. ***Turner/Finley*** Brief at 5-6. As summarized by the PCRA court:

> Detective Sobocinski testified [at trial] that [Appellant] consented to the test and multiple swabs of his right hand were collected. On cross-examination, the assistant district attorney attempted to inquire as to how a [GSR] test would be affected if [Appellant] had washed his hands. An objection to this question by defense counsel was sustained by the [trial c]ourt. Detective Foy only testified as to sending the [GSR] test sample to a lab. Neither detective provided any expert testimony regarding the [GSR] test.

PCRA Court Memorandum Opinion, 9/24/2018, at 3-4 (unnumbered; citations omitted).

At the PCRA hearing, Attorney Taylor testified that the results of the GSR test were inconclusive, and part of his and Attorney Pike's defense strategy was to exploit the inconclusiveness of the test.

> We were aware that the [GSR] was [i]nconclusive. The defense in [Appellant's] case was a difficult one given that the bulk of the evidence against him was [*sic*] eyewitness who knew him and would testify they observed [Appellant] shoot the victim. So we were in a position … [of making] the argument that the evidence isn't beyond a reasonable doubt, that these witnesses are not credible, and that there's no other evidence. Now, the GSR was [i]nconclusive[.] …. The reason I went to the question relative to the GSR [was] to get as close to the line as possible and get into evidence that it's [i]nconclusive, they don't have it, sufficiency of the investigation, you didn't do these tests and things like that. And get close to the line as possible without, you know, letting in evidence that would hurt [Appellant]; but ultimately the evidence of the GSR was inconclusive and that's just that[.]

N.T., 8/14/2018, at 22-23.

In its memorandum opinion, the PCRA court credited Attorney Taylor's testimony as credible and found that the defense strategy employed by Appellant's counsel was reasonable and "that no better alternative existed." PCRA Court Memorandum Opinion, 9/24/2018, at 4, 8 (unnumbered).

It is well-settled that

> before a claim of ineffectiveness can be sustained, it must be determined that, in light of all the alternatives available to counsel, the strategy actually employed was so unreasonable that no competent lawyer would have chosen it. If a reasonable basis exists for the particular course, the inquiry ends and counsel's performance is deemed constitutionally effective. Nor can a claim of ineffective assistance generally succeed through comparing, by hindsight, the trial strategy employed with alternatives not pursued. A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

*Commonwealth v. Reed*, 42 A.3d 314, 324 (Pa. Super. 2012) (citations and quotation marks omitted).

Here, the PCRA court found that the detectives did not provide any expert testimony, which the certified record confirms. Moreover, the court found that any testimony regarding the GSR test that was elicited by counsel was part of counsel's defense strategy and that strategy was reasonable. We see no reason to disturb this finding. *See Commonwealth v. Jones*, 912 A.2d 268, 293 (Pa. 2006) ("The findings of a post-conviction court, which hears evidence and passes on the credibility of witnesses, should be given great deference.").

Next, Appellant alleges trial counsel were ineffective for failing to call the emergency room surgeons who operated on the victim as witnesses. *Turner*/*Finley* Brief at 6. Although testimony from Dr. Ross revealed that the victim died of multiple gunshot wounds, and specifically, of a gunshot wound to the femoral artery, *see* N.T., 8/20/2015, at 237-38, Appellant asserts that because the victim was shot "from the waist down," counsel should have called the emergency room surgeons to testify as to whether the victim's death was preventable. N.T., 8/14/2018, at 8-9. Essentially, Appellant is implying that the emergency room surgeons who treated the victim were negligent and that their negligence contributed to, or was the cause of, the victim's death. *Id.*

> In order to establish that trial counsel was ineffective for failing to call witnesses, a petitioner must: (1) identify the witness or witnesses; (2) demonstrate that counsel actually knew, or had a duty to know, the identity of the witness or witnesses prior to trial; (3) demonstrate that the witness or witnesses were ready, willing and able to testify for the defense at trial; and (4) demonstrate that the proposed testimony would have been helpful to the defense asserted at trial.

*Commonwealth v. Neal*, 713 A.2d 657, 663 (Pa. Super. 1998).

In considering Appellant's claim of ineffective assistance of counsel for failing to call these alleged witnesses, the PCRA court found Appellant was not entitled to relief because Appellant failed to present the testimony of the emergency room surgeons at the PCRA hearing. Memorandum, 9/24/2018, at 5-6 (unnumbered) ("Without hearing the testimony of the emergency room surgeons, th[e PCRA court] is unable to determine if they were willing

to testify and whether they would have been beneficial to the defense."). Additionally, the court found Appellant "failed to submit affidavits from the emergency room surgeons indicating their availability and willingness to testify for the defense." *Id.* at 6 (unnumbered). Lastly, the PCRA court found that

> [u]pon consideration of the testimony provided by Dr. Ross, it is clear that the victim had no chance of survival based upon the location of the gunshot wound. It is highly unlikely that the emergency room physicians would have essentially admitted their own negligence and testified that they should have prevented the victim's death.

*Id.* We agree.

Here, Appellant baldy asserts that had the emergency room surgeons been called to testify, they would have provided favorable testimony to his defense regarding victim's cause of death. Such a bald assertion, without more, does not meet his burden. Moreover, and most notably, Appellant has failed to demonstrate that these alleged witnesses were willing and able to testify on his behalf at trial. This alone precludes Appellant from obtaining relief. *See Commonwealth v. Khalil*, 806 A.2d 415, 422-23 (Pa. Super. 2002) ("This Court will not grant relief based on an allegation that a certain witness may have testified in the absence of an affidavit from that witness to show that the witness would, in fact, testify.").

Irrespective of the foregoing, even if Appellant pleaded sufficiently this claim, we would find it lacks arguable merit.

The causal connection required to attach criminal responsibility for the death of a victim must be more direct than the tort law concept of proximate cause. In **Commonwealth v. Nunn**, our Court described the two-part test to determine criminal causation.

First, the defendant's conduct must be an antecedent, but for which the result in question would not have occurred. A victim's death cannot be entirely attributable to other factors; rather, there must exist a causal connection between the conduct and the result of conduct; and causal connection requires something more than mere coincidence as to time and place. Second, the results of the defendant's actions cannot be so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible.

As to the first part of the test, the defendant's conduct need not be the only cause of the victim's death in order to establish a causal connection. Criminal responsibility may be properly assessed against an individual whose conduct was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result. The second part of the test is satisfied when the victim's death is the natural or foreseeable consequence of the defendant's actions. Where the fatal result was an unnatural or obscure consequence of the defendant's actions, justice would prevent us from allowing the result to have an impact upon a finding of the defendant's guilt.

947 A.2d 756, 760 (Pa. Super. 2008) (citations and quotation marks omitted)[.]

**Commonwealth v. Buterbaugh**, 91 A.3d 1247, 1256-57 (Pa. Super. 2014)

(some citations omitted).

In this case, the evidence presented at trial, which this Court found sufficient to sustain Appellant's conviction on direct appeal, established that

Appellant twice shot the victim at close range. Dr. Ross, an expert in forensic pathology, testified that the cause of death was a gunshot wound that hit the victim's femoral artery, which Dr. Ross testified as being a vital part of the human body. As such, any alleged "negligence" that the emergency room physicians would possibly have testified to would not have negated the fact that the victim's arrival at the hospital for treatment was necessitated by the injuries inflicted upon her by Appellant. Moreover, it is clear that Appellant's conduct was "a direct and substantial factor in producing the death[,]" regardless of any other alleged factors that may have contributed to her death, and the result of Appellant's actions was not so "extraordinarily remote or attenuated" that it would be unfair to hold Appellant criminally liable under these circumstances. **Buterbaugh**, **supra**. No relief is due.

In his third issue, Appellant contends trial counsel were ineffective for failing to impeach two Commonwealth witnesses, Frazier and McDuffie. Appellant alleges both witnesses had ulterior motives to testify; Frazier because of a lawsuit she was involved in against the Sherman Hills Apartment Complex, where the shooting occurred, and McDuffie because she was previously in a relationship with the victim and had pending criminal charges at the time of Appellant's trial. N.T., 8/14/2018, at 10-12.

At the PCRA hearing, Attorney Pike testified that he and Attorney Taylor hired a private investigator to investigate the Commonwealth

witnesses but were unsuccessful in obtaining any additional information other than what was provided by the Commonwealth during discovery. *Id.* at 31-32. Thus, while they were aware of Appellant's allegations about Frazier's financial motives, they were unable to corroborate independently and verify this information. *Id.* at 32-33. However, trial counsel testified that they did receive criminal records of "all witnesses and potential witnesses" during discovery, as well as independently searched both the magisterial district court and Court of Common Pleas dockets, and utilized these records during cross-examination. *Id.* at 24-26, 32. The PCRA court credited counsel's testimony and found Appellant's allegations to be without merit. Memorandum, 9/24/2018, at 6-8 (unnumbered). The record supports the PCRA court's findings.

Specifically, the transcript from Appellant's trial reveals that Attorney Pike cross-examined McDuffie, who admitted that she had dated the victim and acknowledged that she had pending criminal charges. N.T., 8/19/2014, at 76-77, 102-107. However, despite Attorney Pike's inquiry, McDuffie denied that she expected to "gain favor with the Commonwealth" with respect to these charges in exchange for her testimony. *Id.* at 107. In light of the foregoing, the record clearly belies Appellant's claim that counsel did not use these alleged ulterior motives in an attempt to impeach McDuffie.

With respect to Frazier, while she was cross-examined extensively at trial, counsel did not inquire about a lawsuit that Frazier was involved in

against the apartment complex. However, not only did the PCRA court credit counsel's testimony that such an allegation could not be independently corroborated, at the PCRA hearing, Appellant admitted that he too, did not have any "proof" regarding Frazier potentially "inheriting" money from a lawsuit against the apartment complex. **See** N.T., 8/14/2018, at 10. It is well-settled that "[c]ounsel cannot be faulted for failing to discover or present evidence if Appellant fails to meet the burden of establishing that the evidence exists." **Commonwealth v. Fisher**, 813 A.2d 761, 771 (Pa. 2002). For these reasons, Appellant is not entitled to relief.

Lastly, Appellant claims that, due to the cumulative errors of trial counsel, Appellant was denied the right to a fair trial. Initially, we observe that

> [i]t is well-settled that no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually. Accordingly, where ineffectiveness claims are rejected for lack of arguable merit, there is no basis for an accumulation claim. When the failure of individual claims is grounded in lack of prejudice, however, then the cumulative prejudice from those individual claims may properly be assessed.

**Commonwealth v. Smith**, 181 A.3d 1168, 1187 (Pa. Super. 2018) (citations and quotation marks omitted).

The PCRA court found that "[n]one of [Appellant's] claims warrant[s] relief individually and they do not do so collectively." Memorandum, 9/24/2018, at 8. As discussed *supra*, we agree with the PCRA court's findings, and reject all of Appellant's ineffective assistance of counsel claims

as meritless. Thus, as noted by the PCRA court, there can be no aggregation of prejudice. **See Smith**, 181 A.3d at 1187.

We agree with counsel that based upon the PCRA court's findings and the record, which supports them, the issues raised by Appellant have no merit. Therefore, the PCRA court did not err by dismissing Appellant's PCRA petition. Accordingly, we affirm the order of the PCRA court denying Appellant's PCRA petition and grant counsel's petition to withdraw.

Order affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/19