J-S29017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LEVON WARNER | : | |
| | : | |
| Appellant | : | No. 2171 EDA 2019 |

Appeal from the PCRA Order Entered July 17, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005973-2008

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LEVON WARNER | : | |
| | : | |
| Appellant | : | No. 2172 EDA 2019 |

Appeal from the PCRA Order Entered July 17, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005975-2008

BEFORE: PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                **FILED SEPTEMBER 18, 2020**

Appellant Levon Warner, appeals from the orders dismissing his first timely Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, petition. Appellant argues that trial counsel was ineffective for failing to object to the trial court's reasonable doubt instruction.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

We summarize the facts underlying Appellant's convictions as follows:

In the spring of 2008, co-conspirator Howard Cain developed a plan to rob a Bank of America branch located inside a Philadelphia supermarket. Mr. Cain recruited several individuals to carry out the plan, which began with a series of separate robberies to obtain weapons and a getaway vehicle. Appellant, however, did not participate in these preliminary robberies. On the morning of May 3, 2008, Appellant and Mr. Cain met with co-defendant Eric Floyd to consummate the bank robbery. Prior to departing for the bank, Mr. Floyd and Mr. Cain disguised themselves in burqas. Appellant wore a wig, glasses, and a dust mask to obscure his face. Mr. Floyd drove the men to the supermarket in a stolen Jeep. Upon arriving at the supermarket parking lot, Mr. Floyd parked the vehicle, picked out a shopping cart, and placed a box inside the cart. The box contained a stolen SKS assault rifle. When the co-conspirators entered the supermarket, Mr. Floyd stood with the shopping cart near the door to the bank.

With Mr. Floyd serving as a lookout, Mr. Cain and Appellant entered the bank, stood in the back, and watched a bank manager unlock the gate to the teller area. Once the gate was unlocked, Mr. Cain rushed toward the manager, grabbed her, dragged her into the teller area, brandished a handgun, and demanded that the tellers place money into a bag Mr. Cain was carrying. Armed with a handgun, Appellant paced in front of the teller windows as the tellers complied with Mr. Cain's demands. The tellers placed approximately $50,000.00 into Mr. Cain's bag, along with a GPS tracking device. The tracking device activated at 11:27 a.m., when the thieves exited the bank.

After the robbery, Appellant, Mr. Cain, and Mr. Floyd returned to the Jeep. Mr. Floyd served as the getaway driver. Within minutes, calls went out over police radio relaying information about the robbery and the suspects. Philadelphia Police Sergeant Stephen Liczbinski received the call, spotted the getaway car, and commenced a pursuit. During the chase, someone in the Jeep said, "Bang him." At that point, Mr. Cain asked Appellant for the assault rifle, which Appellant handed to him. Mr. Floyd stopped the Jeep, and Mr. Cain exited with the assault rifle. Sergeant Liczbinski stopped his vehicle behind the Jeep, exited, and approached the Jeep. Before Sergeant Liczbinski could draw his service weapon, Mr. Cain opened fire with the assault rifle and killed the sergeant.

After the shooting, Mr. Cain reentered the Jeep; and Mr. Floyd drove to a second getaway vehicle, a minivan, parked nearby. Appellant drove the minivan a short distance before Mr. Cain ordered him to pull over. Appellant pulled over, and the suspects exited and split up. Later that day, Mr. Cain died during a shootout with police. Police subsequently arrested Appellant, and he provided a statement detailing his participation in the robbery. Police did not arrest Mr. Floyd until May 7, 2008, when a tipster led them to the abandoned house where Mr. Floyd was hiding. On May 8, 2008, Mr. Floyd provided an inculpatory statement regarding his own participation in the bank robbery.

*Commonwealth v. Warner*, 2013 WL 11299285, *1 (Pa. Super. Jan. 14, 2013) (unpublished mem.).

At the above docket numbers, the Commonwealth charged Appellant with three counts of robbery, one count each of conspiracy, first-degree murder, and possession of an instrument of crime, as well as firearms violations.[1] Appellant's cases were consolidated for trial with that of his co-defendant, Mr. Floyd.

Following closing arguments, the trial court charged the jury. In relevant part, the trial court posed the following analogy while charging the jury on reasonable doubt:

You have heard me talk about the Commonwealth's burden of proof. It is the highest burden in the law. There is nothing like proof beyond a reasonable doubt. The Commonwealth bears that burden in this case and every case but, ladies and gentlemen, that does not mean the Commonwealth must prove its case beyond all doubt.

---

[1] 18 Pa.C.S. §§ 3701, 903, 2502(a), 907, 908.

- 3 -

The Commonwealth is not required to meet some mathematical certainty. The Commonwealth is not required to demonstrate the complete impossibility of innocence. The Commonwealth is not going to answer all of your questions. The Commonwealth must address your concerns to a reasonable doubt. A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to pause, to hesitate, to refrain from acting upon a matter of the highest importance to their own affairs or to their own interests.

A reasonable doubt must fairly arise out of the evidence that was presented or out of the lack of evidence presented with respect to some element of each of the crimes charged. You see, the Commonwealth has to prove the crime was committed and it has to prove the person on trial committed the crime. So what you are looking to see is these crimes, each one is defined by the Legislature and they are defined by the elements. Did the Commonwealth meet those elements? Did they meet them to proof beyond a reasonable doubt?

It may be helpful to think about reasonable doubt this way. Now this was a very long slow jury selection but one of the benefits of the length of the jury selection is that I had the opportunity to speak with each of you individually. So I know that each one of you has someone in your life that you love. Each of you has a precious one, a spouse, a significant other, a sibling, a niece, a nephew, a grandchild. Each one of you loves somebody.

Think for a moment if your precious one was told by their physician that they have a life-threatening condition and that the only protocol for that life-threatening condition was surgery. Now, very likely you are going to ask for a second opinion. If you are like me, you will go through your Rolodex and call everybody you know who knows anything at all about medicine. Tell me about this disease. Tell me what you know about this surgery. Tell me who you know does the surgery. Who is the best in the city? Who is the best in the country? How can I help my loved one? You will research everything you can high and low but at some point, the question will be called. If you go forward with the surgery, it is not because you have moved beyond all doubt. Ladies and gentlemen, there are no guarantees. If you go forward, it is because you have moved beyond all reasonable doubt.

A reasonable doubt must be a real doubt, ladies and gentlemen. It cannot be a doubt that is imagined or manufactured. It cannot be a doubt that you create to avoid carrying out an unpleasant responsibility. You may not find [Appellant] or Eric Floyd guilty based upon a mere suspicion. The Commonwealth bears its burden of proving each person guilty beyond a reasonable doubt. If the Commonwealth has met that burden, then Levon Warner and Eric Floyd are no longer presumed to be innocent and you should find each one individually guilty; on the other hand, if the Commonwealth has not met its burden, then you must find each one individually not guilty.

N.T. Trial, 7/26/10, at 57-61.[2] Appellant did not object to this particular instruction.

The jury found Appellant guilty of the above crimes but ultimately "could not reach a unanimous decision regarding the imposition of the death penalty." *Warner*, 2013 WL 11299285 at *2. Accordingly, the trial court sentenced Appellant to life imprisonment without parole and a consecutive aggregate sentence of 67½ to 135 years' imprisonment. While still represented by trial counsel, Appellant appealed, and this Court affirmed on January 14, 2013. *See id.* at *1. Appellant did not challenge the jury instruction on direct appeal and did not file a petition for allowance of appeal with our Supreme Court.

---

[2] Except for the surgery analogy, the trial court's jury instruction generally tracked the language set forth in Pennsylvania's Suggested Standard Criminal Jury Instruction § 7.01 ("Presumption of Innocence—Burden of Proof—Reasonable Doubt").

On January 21, 2014, Appellant filed timely *pro se* PCRA petitions at both docket numbers. At docket no. **5973**-2008, the docket reflects that on August 19, 2014, Todd Mosser, Esq., entered his appearance as Appellant's counsel. On February 10, 2015, the docket at no. **5973**-2008 states that the PCRA court relieved Attorney Mosser and that Barnaby Wittels, Esq., entered his appearance. The docket at no. **5975**-2008 does not reflect any entry of appearance by Attorney Mosser, but states that on November 4, 2014, Attorney Wittels entered his appearance.

Eventually, on December 21, 2017, Attorney Wittels filed amended PCRA petitions at both docket numbers. The petitions challenged the trial court's reasonable doubt instruction and alleged that trial and direct appeal counsel were ineffective for failing to challenge the instruction. On October 23, 2018, Attorney Wittels filed a second amended PCRA petition, which listed both docket numbers.[3] On March 1, 2019, the Commonwealth filed a motion to dismiss Appellants' PCRA petition at both docket numbers.[4] On May 30, 2019, at both docket numbers, the PCRA court issued a Pa.R.Crim.P. 907 notice, which stated that Appellant's claims lacked merit. On June 19, 2019,

_____

[3] We note that only the docket at no. 5975-2008 reflects Appellant's second amended PCRA petition. The docket at no. 5973-2008 does not reflect any such filing.

[4] Only the docket at 5973-2008 reflects the Commonwealth's motion to dismiss. The docket at 5975-2008 does not have an entry for the Commonwealth's motion to dismiss.

Appellant filed a response to the Rule 907 notice reiterating his challenge to the trial court's instruction. On July 17, 2019, the PCRA court formally dismissed both PCRA petitions.

On July 30, 2019, Appellant filed timely notices of appeal at each docket number. Neither the records nor dockets reflect any motion to withdraw by Attorney Wittell. Nonetheless, both dockets state that on August 19, 2019, the PCRA court granted Attorney Wittell's request to withdraw and appointed James F. Berardinelli, Esq., as appellate counsel. Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

Appellant raises the following issues:

1. Did the PCRA court err in finding that the defendant's right of due process under the 5th, 6th and 14th amendments of the U.S. Constitution and Article 1, §9 of the Pennsylvania Constitution was not violated by the trial court's constitutionally infirm reasonable doubt instruction which contained a hypothetical that impermissibly raised the degree of reasonable doubt required to acquit, thereby directing the jury to favor conviction, and improperly structured the hypothetical in terms of the jury proceeding to take action as opposed to hesitating?

2. Did the PCRA court err in finding that trial counsel and all prior appellate/PCRA counsel were not ineffective for failing to object to the violation of defendant's right of due process under the 5th, 6th and 14th amendments of the U.S. Constitution and Article 1, §9 of the Pennsylvania Constitution was not violated by the trial court's constitutionally infirm reasonable doubt instruction which contained a hypothetical that impermissibly raised the degree of reasonable doubt required to acquit, thereby directing the jury to favor conviction, and improperly structured the hypothetical in terms of the jury proceeding to take action as opposed to hesitating?

Appellant's Brief at 3.

We summarize both of Appellant's arguments together. Appellant first argues that he must be awarded a new trial because the trial court's reasonable-doubt instruction violated his right to due process. Appellant's Brief at 10. Appellant alleges that the trial court's analogy about pursuing a life-saving surgery for a loved one "impermissibly raised the degree of reasonable doubt required to acquit," and directed the jury to favor conviction. *Id.* In support, Appellant cites two unreported federal district court decisions: *Brooks v. Gilmore*, 2017 WL 3475475 (E.D. Pa. Aug. 11, 2017) (unpublished mem.), in which a federal court found unconstitutional an almost identical jury instruction given by the same judge, and *McDowell v. DelBalso*, 2019 WL 7484699 (E.D. Pa. Jan. 23, 2019) (unpublished mem.). *Id.* at 13-14. Appellant contends that the trial court improperly structured the hypothetical in terms of the jury "proceeding to take action" as opposed to hesitating to act. *Id.* (citing *Holland v. United States*, 348 U.S. 121, 140 (1954), and *Brooks*). Additionally, Appellant, citing an unrelated federal appellate case, argues that the Commonwealth conceded that counsel's failure to object to the same instruction was ineffective assistance of counsel. *Id.* at 16 (citing *Grant v. Giroux*, No. 17-2559 (3d Cir. 2018)).[5]

In support of his second issue, Appellant argues that trial counsel was ineffective for failing to object to the instruction, which Appellant alleges

_____

[5] Appellant did not provide any other citation.

- 8 -

violated his due process rights. *Id.* at 15-16. Appellant asserts that due to the fundamental nature of the principle of reasonable doubt, there was no reasonable basis for trial counsel to not object to the instruction that "stripped [the defendant] of vital protection." *Id.* at 16 (citing *Brooks*). Appellant also contends that the prejudice resulting from the failure to object to an unconstitutional reasonable doubt instruction is presumed because a defective reasonable doubt instruction constitutes structural error. *Id.* (citing *Sullivan v. Louisiana*, 508 U.S. 275 (1993), and *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017)). Appellant asserts that he must be awarded a new trial due to ineffective assistance of trial counsel.

The Commonwealth did not address whether the trial court's jury instruction was unconstitutional. The Commonwealth, however, argues that Appellant's trial counsel's decision to not object was reasonable. Commonwealth's Brief at 21-22. The Commonwealth claims that at least one other decision by the same district court in which *Brooks* was decided did not find a similar jury instruction unconstitutional. *Id.* (citing *Johnson v. Varner*, No. 01-CV-2409 (E.D. Pa. Sept. 4, 2003)).[6] Similarly, the Commonwealth argues that Pennsylvania courts have routinely upheld the same jury instruction. *Id.* (citing *Commonwealth v. Corbin*, 2016 WL 1603471 (Pa. Super. April 19, 2016) (unpublished mem.) (rejecting the

---

[6] The Commonwealth did not provide any other citation.

challenge to the identical illustrative hypothetical on reasonable doubt issued by the same trial judge herein), *Commonwealth v. Gant*, No. 1612 EDA 2007 (Pa. Super. Sept. 21, 2009) (unpublished mem.) (same), and *Commonwealth v. Johnson*, No. 1639 EDA 1999 (Pa. Super. Aug. 3, 2000) (unpublished mem.) (same)).[7]  Accordingly, the Commonwealth argues that because other Pennsylvania and federal courts reached the same conclusion, it was reasonable for Appellant's trial counsel to not object.  *Id.*

More importantly, the Commonwealth reasons that Appellant is not entitled to a presumption of prejudice under *Sullivan* because ineffectiveness claims are subject to the requirement that the petitioner must affirmatively prove prejudice.  *Id.* at 23- 24 (citing *Strickland v. Washington*, 466 U.S. 668, 693 (1984)).[8]  The Commonwealth argues that Appellant cannot prove such prejudice because there was compelling evidence of Appellant's guilt such as DNA, a detailed confession, and eyewitness testimony.  *Id.* at 22.

This Court's review of an order dismissing a PCRA petition is "limited to examining whether the PCRA court's determination is supported by the evidence of the record and whether it is free of legal error."  *Commonwealth*

---

[7]  The Commonwealth's citation of non-precedential, unpublished memorandum decisions of this Court filed **prior** to May 2, 2019 is prohibited under 210 Pa. Code § 65.37 and does not provide persuasive nor reliable legal authority in this case.

[8]  *See Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987) (adopting *Strickland*).

*v. Ousley*, 21 A.3d 1238, 1242 (Pa. Super. 2011). To the extent Appellant's issues raise questions of law, we review the PCRA court's legal conclusions *de novo*. *Commonwealth v. Diaz*, 226 A.3d 995 (Pa. 2020).

We note that a jury charge that misstates the level of reasonable doubt necessary for an acquittal violates due process. *Cage v. Louisiana*, 498 U.S. 39, 41 (1990).[9] Such an error on direct appeal constitutes structural error.[10] *See Sullivan*, 508 U.S. at 281-82;[11] *see generally Weaver*, 137 S. Ct. at 1908; *Commonwealth v. Sandusky*, 77 A.3d 663, 671 (Pa. Super. 2013).

_____

[9] *See also Sullivan*, 508 U.S. at 278 ("It is self-evident, we think, that the Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict are interrelated). On direct appeal, when an appellate court reviews a challenge to a trial court's reasonable doubt instruction on direct appeal, the instruction must be read as a whole, instead of in isolated fragments. *Commonwealth v. Cook*, 952 A.2d 594, 626-27 (Pa. 2008). "An instruction will be upheld if it clearly, adequately and accurately reflects the law. The trial court may use its own form of expression to explain difficult legal concepts to the jury, as long as the trial court's instruction accurately conveys the law." *Id.* (quoting *Commonwealth v. Spotz*, 759 A.2d 1280, 1287 (Pa. 2000)). Further, we note that trial courts are given great discretion in framing jury instructions. *Commonwealth v. Eichinger*, 915 A.2d 1122, 1138 (Pa. 2007).

[10] "The 'structural error' concept is not commonplace in Pennsylvania jurisprudence. It is closely allied to the notion of fundamental error." *Commonwealth v. Baroni*, 795 A.2d 1007, 1009 n.2 (Pa. Super. 2002).

[11] The *Sullivan* Court reasoned that "a misdescription of the burden of proof . . . vitiates all the jury's findings. A reviewing court can only engage in pure speculation—its view of what a reasonable jury would have done. And when it does that, the wrong entity judge[s] the defendant guilty." *Sullivan*, 508 U.S. at 281 (citations omitted).

In **Weaver**, the United States Supreme Court discussed structural errors that were preserved on direct appeal, where prejudice is presumed, and the prejudice prong of the ineffectiveness analysis where the underlying claim of alleged counsel's ineffectiveness is a structural defect.[12] **Weaver**, 137 S. Ct. at 1907-12. Specifically, the High Court held that for a claim of ineffective assistance of counsel for failure to object to the closing of the courtroom during *voir dire*, the petitioner is required to prove that counsel's omission prejudiced the defendant. **Id.** at 1912-13. Even though the claim could have resulted in a new trial if it was raised on direct appeal without a harmless error analysis, the petitioner must still satisfy the **Strickland** prejudice requirement:

> [I]n the case of a structural error where there is an objection at trial and the issue is raised on direct appeal, the defendant generally is entitled to "automatic reversal" regardless of the error's actual "effect on the outcome."
>
> The question then becomes what showing is necessary when the defendant does not preserve a structural error on direct review but raises it later in the context of an ineffective-assistance-of-counsel claim. To obtain relief on the basis of ineffective assistance of counsel, the defendant as a general rule bears the burden to meet two standards. First, the defendant must show deficient performance—that the attorney's error was "so serious

---

[12] The **Weaver** Court identified three classes of structural error. "First, an error has been deemed structural in some instances if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest." **Weaver**, 137 S. Ct. at 1908. "Second, an error has been deemed structural if the effects of the error are simply too hard to measure." **Id.** "Third, an error has been deemed structural if the error always results in fundamental unfairness." **Id.**

that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Second, the defendant must show that the attorney's error "prejudiced the defense."

*Id.* at 1910 (citations omitted); *Commonwealth v. Isaac*, 205 A.3d 358, 365 (Pa. Super. 2019) (reiterating "that an error that would invalidate a conviction on direct appeal need not necessarily do so on collateral review." (discussing *Weaver*)).[13] "Consistent with *Weaver*, the Pennsylvania Supreme Court has held on several occasions that the absence of harmless error for purposes of direct appeal does not equate to presumed prejudice on collateral review." *Isaac*, 205 A.3d at 365-66.[14]

---

[13] *Cf. also Commonwealth v. Koehler*, 229 A.3d 915, 955 n.8 (Pa. 2020) (Dougherty, J., concurring and dissenting) (noting the High Court has recognized that "some structural errors, when raised collaterally (as here), as opposed to on direct review . . . still require a showing of prejudice." (citing *Weaver*, 137 S. Ct. at 1910)).

[14] *Cf. also Commonwealth v. Fisher*, 813 A.2d 761, 774-75 (Pa. 2002) (Saylor, J., concurring). In *Fisher*, the petitioner brought an ineffective assistance of counsel claim based on trial counsel's failure to object to a reasonable doubt instruction. *Fisher*, 813 A.2d at 774-75. In regard to prejudice, the petitioner argued that errors involving the reasonable doubt standard can never be harmless. *Id.* Justice Saylor concurred in the result, reasoning that the petitioner was not entitled to relief and found the petitioner had failed to argue that counsel's failure to object to a reasonable doubt instruction prejudiced him. *Id.* (agreeing that while "errors involving the reasonable doubt standard can never be harmless" when that assertion is raised on "direct review, in this case, the claim is presented in the form of a collateral attack and governed by an ineffectiveness standard. [The petitioner] must therefore demonstrate that counsel's omission, namely, his failure to object, had an actual adverse effect on the outcome of the proceedings, that is, that there is a reasonable probability the verdict would

- 13 -

In sum, whether the defendant is entitled to a presumption of prejudice after it is determined there was a structural defect on direct appeal is different from the prejudice that a PCRA petitioner must establish when claiming counsel was ineffective. *See id.*[15] Indeed, our Supreme Court has required a petitioner to establish prejudice in resolving a claim that trial counsel was ineffective for failing to object to an erroneous instruction on reasonable doubt. *See Commonwealth v. Cox*, 863 A.2d 536, 549 (Pa. 2004) (holding the petitioner "has failed to demonstrate that he was prejudiced by the failure of trial counsel to object to the jury instruction regarding reasonable doubt. [The defendant] has not shown that there is a reasonable probability that, but for counsel's alleged error, his verdict would have been different." (citation omitted)).

It is well established that in order to obtain PCRA relief, the petitioner must establish that trial counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could

___

have been different absent counsel's alleged ineffectiveness." (citation omitted)).

[15] *See generally Commonwealth v. Collins*, 888 A.2d 564, 573 (Pa. 2005) (holding that ineffective assistance of counsel claims raise "a distinct legal ground for purposes of state PCRA review" and the claim should be reviewed "under the three-prong ineffectiveness standard"); *Commonwealth v. Howard*, 645 A.2d 1300, 1307-08 (Pa. 1994) (differentiating the harmless error standard from prejudice in collateral review and explaining that "it is not axiomatic that what can never be harmless error by the trial court equates to ineffective assistance of counsel").

have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). The law, however, presumes that counsel was effective, which requires the petitioner to carry the burden of proving that counsel was ineffective. *Commonwealth v. Simpson*, 66 A.3d 253, 260 (Pa. 2013).

Recently, in *Diaz*, our Supreme Court provided useful guidance in reviewing claims of ineffective assistance of counsel claims:

> To overcome this presumption [of effective assistance], the vast majority of cases, decided under *Strickland*, require the defendant to plead and prove that (1) the claim has arguable merit; (2) counsel lacked any reasonable basis for the action or inaction; and (3) the petitioner suffered prejudice as a result. Prejudice, in this context, has been repeatedly stated as requiring proof that but for counsel's action or inaction, there was a reasonable probability that the proceeding would have had a different outcome. . . .
>
> On the same day that the Court issued its opinion in *Strickland*, the high Court also decided [*United States v. Cronic*, 466 U.S. 648 (1984)], which recognized an exception to *Strickland*'s general rule requiring proof of prejudice to prevail on a claim of ineffective assistance of counsel. . . .
>
> The [*Cronic*] Court observed, however, that there were certain, limited circumstances where prejudice is so likely that the cost of litigating the question of prejudice is unnecessary. Without providing an exhaustive list of scenarios, the *Cronic* Court gave examples of when the presumption of prejudice applies. They included: (1) the actual or constructive denial of counsel at a critical stage of trial; (2) when counsel fails entirely to provide "meaningful adversarial testing" of the prosecution's case; and (3) circumstances wherein no lawyer, regardless of general competency, could have provided effective assistance of counsel.

*Id.* at 1007-08 (citations omitted); *see Commonwealth v. Bond*, 819 A.2d 33, 42 (Pa. 2002); *Commonwealth v. Kimball*, 724 A.2d 326, 333 (Pa. 1999); *Commonwealth v. Lauro*, 819 A.2d 100, 105-06 (Pa. Super. 2003).

- 15 -

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit. Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Smith*, 167 A.3d 782, 788 (Pa. Super. 2017). If it is clear that a claim of ineffective assistance of counsel is baseless or meritless, then an evidentiary hearing is unnecessary, and the unfounded allegation should be rejected and dismissed. *Commonwealth v. Clemmons*, 479 A.2d 955, 957 (Pa. 1984); *Commonwealth v. Stanley*, 830 A.2d 1021, 1022 (Pa. Super. 2003). Counsel is only considered ineffective when the alternative not selected "offered a potential for success substantially greater than the tactics used." *Clemmons*, 479 A.2d at 957.

Even assuming the claim has arguable merit, generally, the petitioner must plead and prove the remaining two prongs to establish counsel's ineffectiveness. *Commonwealth v. Fitzgerald*, 979 A.2d 908, 910 (Pa. Super. 2009). A petitioner's failure to satisfy any prong of the test for ineffectiveness mandates rejection of the claim without further analysis. *Commonwealth v. Busanet*, 817 A.2d 1060, 1066 (Pa. 2002).

Instantly, Appellant's sole claim is that he is entitled to a presumption of prejudice due to *Sullivan*, which held that on direct appeal, an unconstitutional reasonable doubt instruction is a structural error that is not subject to a harmless error analysis. *Sullivan*, 508 U.S. at 281-82.

Assuming, without holding, that Appellant has established that the challenge to the instruction at issue has arguable merit, Appellant must still establish actual prejudice. *See Cox*, 863 A.2d at 549; *Diaz*, 226 A.3d at 1007-08. Appellant, however, failed to recognize his burden of proof under *Cox*, and he simply failed to argue any reasonable probability of a different outcome but for counsel's error. *See Cox*, 863 A.2d at 549. For example, as discussed above, the *Cox* Court affirmed the dismissal of a PCRA petition because the petitioner did not demonstrate that he was prejudiced by trial counsel's failure to object to a reasonable doubt instruction. *Id. Cf. also Fisher*, 813 A.2d at 774-75. Just as in *Cox*, we are bound to conclude that Appellant, because he failed to argue **any *Strickland*/*Pierce*** prejudice or presumption of prejudice whatsoever, is not entitled to relief. *See Cox*, 863 A.2d at 549; *Busanet*, 817 A.2d at 1066; *Diaz*, 226 A.3d at 1007-08. Because Appellant has failed to demonstrate prejudice sufficient to entitle him to relief, and for the foregoing reasons, we affirm.[16] *See Hudson*, 820 A.2d at 726.

Order affirmed.

---

[16] We note that the trial court denied Appellant's petition on the grounds that there was no arguable merit to his challenge to the analogy used by the trial court to define reasonable doubt. PCRA Ct. Op. at 11. However, "[t]o the extent our legal reasoning differs from the trial court's we note that as an appellate court, we may affirm on any legal basis supported by the certified record." *Commonwealth v. Williams*, 125 A.3d 425, 433 n.8 (Pa. Super. 2015).

President Judge Panella joins the memorandum.

Judge Pellegrini concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/18/20